O

`UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JAMES WHITE, <br><br> Plaintiff, <br><br> v. <br><br> J. SANCHEZ, <br><br> Defendant. | Case No. CV 21-04066-GW (DFM) <br><br> Report and Recommendation of United States Magistrate Judge |

This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.    INTRODUCTION

Plaintiff James White, a prisoner formerly housed at the California Men's Colony in San Luis Obispo, California, filed this pro se civil rights action under 42 U.S.C. § 1983. See Dkt. 1.[1] The Court previously dismissed Plaintiff's Complaint, Dkt. 1; First Amended Complaint, Dkt. 8 ("FAC"); and Second Amended Complaint, Dkt. 18 ("SAC"), with leave to amend. See Dkt. 5, 11, 43. In the operative Third Amended Complaint ("TAC"), Plaintiff

---

[1] Plaintiff is presently housed at California Health Care Facility-Stockton. See Dkt. 46.

asserts a First Amendment retaliation claim against Defendant J. Sanchez, a Correctional Officer at California Men's Colony. See Dkt. 54.

Before the Court is Defendant's motion to dismiss the TAC. See Dkt. 61 ("Motion"). On July 16, 2024, Plaintiff filed an opposition. See Dkt. 67 ("Opposition"). Defendant filed a reply on August 27, 2024. See Dkt. 71 ("Reply ").

## II.    BACKGROUND

The following allegations are taken from the TAC and are accepted as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On April 10, 2020, Plaintiff was found to have been involved in "inciting a riot" in the main dining hall at California Men's Colony. See TAC ¶¶ 29, 34.[2] Plaintiff alleges that prison staff engaged in misconduct during this incident; he asserts that he observed an officer "unlawfully sneak up behind an inmate who was seated," "snatch him into a chokehold," and "strike him in the face with the butt of his steel baton." Id. ¶ 29. Other officers "then joined in and brutally assaulted" the inmate. Id. At some point during this incident, Plaintiff yelled: "'This is bullsh*t [Sergeant]! He didn't deserve that! What are you going to do about your staff? We aren't going to stand for this! You are going to lose your f*cking job Scott!'" Id. ¶ 30.

After the incident, Plaintiff returned to his cell. See id. ¶ 34. However, four hours later, custody staff removed Plaintiff from his housing unit and placed him in administrative segregation. See id. While Plaintiff was waiting to be placed in administrative segregation, Sanchez "boxed up Plaintiff's property." Id. ¶ 36. Sanchez then approached Plaintiff's holding cell and instructed him to sign a "Property Search Receipt/Notice," which listed items

---

[2] Citations to paragraph numbers refer to the consecutively numbered paragraphs in the TAC.

that Sanchez confiscated. Id. ¶ 38. Plaintiff refused to sign the receipt. See id. ¶ 39.[3] Sanchez told Plaintiff that "if he did not sign the receipt, he would lose all of his property." Id. ¶ 40. Plaintiff replied that if Sanchez destroyed his property, he would "file a grievance and sue [Sanchez]." Id.

Almost a month later, on May 8, 2020, Sanchez visited Plaintiff in administrative segregation and informed him that he had "consolidated" Plaintiff's property. Id. ¶ 42.[4] Sanchez requested Plaintiff sign a Form 1083. See id. ¶¶ 42, 44. Plaintiff refused to sign the form, claiming that Sanchez "listed as contraband several items that were not" and "failed to list several items of property that Plaintiff possessed." Id. ¶ 47. Plaintiff then filed a grievance against Sanchez and "requested an investigation by Internal Affairs." Id. At some point after Plaintiff's filing of his grievance and request for investigation, Sanchez destroyed Plaintiff's property, including six boxes of legal documents. See id. ¶¶ 47, 48.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[3] Plaintiff states he refused to sign the receipt because Sanchez allegedly failed to follow state regulations and the CDCR Department of Operations Manual when he inventoried Plaintiff's property. See TAC ¶ 37. Specifically, Plaintiff contends that Sanchez should have used "Form 1083, 'Inmate Property Inventory'" rather than a "Property Search Receipt/Notice" when he documented Plaintiff's property. Id.

[4] Plaintiff alleges that "[b]ecause Plaintiff had not yet been assessed a SHU term, or put up for transfer, there was no lawful basis for [Sanchez] to go through Plaintiff's property, 'consolidate' it, and inventory it once again." Id. ¶ 43.

3

Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In resolving a 12(b)(6) motion, the Court follows a two-pronged approach. First, the Court accepts all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted). Nor must the Court "accept as true a legal conclusion couched as a factual allegation[.]" Id. (citation omitted). Second, assuming the veracity of well-pleaded factual allegations, the Court "determine[s] whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ." Id.

Courts must "construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted). "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988) (citations omitted).

## IV.  DISCUSSION

Sanchez moves to dismiss on the following grounds: (1) the TAC fails to state a claim for First Amendment retaliation; and (2) Sanchez is entitled to qualified immunity. See Motion at 4-8. For the reasons stated below, the Court recommends dismissal of the TAC with prejudice.

### A.    First Amendment Claim

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). For instance, the First Amendment "guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015) (citation omitted). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004) (footnote omitted).

Sanchez argues that Plaintiff does not state a viable First Amendment retaliation claim under the test established in Rhodes because he fails to allege facts that demonstrate a causal connection between his constitutionally protected conduct and the alleged retaliation. See Motion at 5. The Court agrees. A plaintiff asserting a retaliation claim must demonstrate a causal nexus between the plaintiff's protected activity and the alleged retaliation. See Hartman v. Moore, 547 U.S. 250, 259 (2005). Put another way, a plaintiff must show that his protected conduct was a "substantial' or 'motivating' factor behind the defendant's conduct." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).

In dismissing Plaintiff's prior complaints, the Court observed that there was "no indication that Sanchez harbored any retaliatory intent against Plaintiff. Under Plaintiff's reasoning, every unwarranted confiscation of personal property would be sufficient to state a retaliation claim against a

plaintiff who had filed some grievance or lawsuit against prison officials." Dkt. 5 at 7; Dkt. 11 at 6. The same reasoning applies again to the TAC. While filing a grievance is a protected action under the First Amendment, Brodheim, 584 F.3d at 1269, Plaintiff does not allege that Sanchez destroyed his property because he filed a grievance against him. At most, Plaintiff asserts that at some point after he "refused to sign the 1083 [and] later filed a grievance against [Sanchez]," his property was destroyed. TAC ¶¶ 47, 48.[5] These allegations fail to draw a causal connection between Plaintiff's protected conduct and Sanchez's actions. Indeed, Plaintiff appears to claim that Sanchez destroyed Plaintiff's property because he refused to sign an inventory form, not because he filed a grievance. See id. ¶ 41 (alleging that "[i]t is unlawful for an officer to destroy an inmate's property for not signing a 1083 form").

Plaintiff argues that Sanchez retaliated against him because he filed grievances and lawsuits against Sanchez's coworkers at California Men's Colony. See Opposition at 4-6. He contends that the "proximity of time" between his filing of grievances against Sanchez's coworkers and Sanchez's alleged retaliatory conduct of destroying his property is "evidence probative of retaliatory intent." Id. at 5. However, the mere fact that Sanchez's alleged destruction of Plaintiff's property occurred after Plaintiff filed grievances against Sanchez's coworkers is insufficient to establish that Plaintiff's exercise of his First Amendment rights was the cause of the retaliation. See Huskey v.

---

[5] Plaintiff does not specify the date he filed the grievance against Sanchez or approximate the length of time between the filing of his grievance and Sanchez's alleged destruction of his property. While Plaintiff attached several grievance forms to his original Complaint, the earliest appears to concern Sanchez's confiscation and destruction of Plaintiff's property, which Plaintiff alleges was Sanchez's retaliatory response. See Complaint at 18-26. Thus, the Court cannot find that the timeline of Plaintiff's allegations implies retaliatory motive.

City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (explaining that a retaliation claim cannot rest solely on the "logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this.'"); Clinton v. Geovenetti, No. 08-4178, 2013 WL 5379487, at *6 (C.D. Cal. Sept. 20, 2013) (holding that the fact that defendant's alleged encouragement of harassment occurred after Plaintiff filed prison grievances did not establish that Plaintiff's exercise of his First Amendment rights was the cause of the retaliation). Here, Plaintiff has not shown that Sanchez was even aware that Plaintiff filed grievances and lawsuits against his coworkers. Instead, Plaintiff merely speculates that it is "plausible" that Sanchez's alleged destruction of Plaintiff's property was done "in retaliation for Plaintiff's prior and then-active pursuit of the criminal prosecution of [Sanchez's] friends." Opposition at 4-6. Speculative and conclusory allegations such as these do not suffice to show retaliatory intent.

Finally, to state a retaliation claim, Plaintiff must also allege that Sanchez's actions chilled Plaintiff's exercise of his First Amendment rights or would have a chilling effect on future First Amendment activity. See Rhodes, 408 F.3d at 567 n.11; see also Brodheim, 584 F.3d at 1271 (explaining that "an objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities'" (citation omitted)). Here, Plaintiff alleges that Sanchez's "tortious" conduct would "chill a person of ordinary firmness in the exercise of their First Amendment right to petition for a redress of grievances." TAC ¶ 53. While the Court finds that the destruction of a prisoner's property in retaliation for filing a grievance could chill further protected conduct, Plaintiff has failed to establish that the deterrence or

chilling of his speech "was a substantial or motivating factor" in Sanchez's conduct. See Lacey v. Maricopa Cty., 693 F.3d 896, 916 (9th Cir. 2012).

Accordingly, Plaintiff has failed to state a First Amendment retaliation claim.[6]

**B.    Leave to Amend**

If the Court finds that a complaint fails to state a claim, the Court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). If it is "absolutely clear" that the deficiencies in a pro se complaint cannot be cured by amendment, the Court may dismiss the complaint without leave to amend. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). Further, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

Here, in granting Defendant's first Motion to Dismiss, the Court explained why Plaintiff's allegations were insufficient to survive a motion to dismiss and granted him leave to allege additional facts to state a claim. See Dkt. 43. Plaintiff has adjusted his allegations in the TAC, but these allegations remain insufficient to state a viable First Amendment retaliation claim. Thus, it appears that granting further leave to amend would not result in an amended complaint that could survive a motion to dismiss. Accordingly, dismissal without leave to amend is appropriate in this case.[7]

---

[6] Given this disposition, the Court does not address Sanchez's qualified immunity arguments.

[7] Should Plaintiff believe that he can amend his complaint to make allegations sufficient to state a cause of action as to the claim found inadequate herein, he should tell the Court in his objections to this Report and Recommendation.

## V.   RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting Defendant's Motion to Dismiss (Dkt. 61); and (3) dismissing this action with prejudice.

Date: September 13, 2024

DOUGLAS F. McCORMICK
United States Magistrate Judge

9