Pedro White Sr.
CDCR # AI-5074
P.O. Box 213040
Stockton, CA 95213

Plaintiff in pro se

FILED
CLERK, U.S. DISTRICT COURT

JAN - 2 2025

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **PEDRO WHITE SR.,** <br> Plaintiff, <br><br> v. <br><br> **J. SANCHEZ,** <br> Defendant. | 2:21-CV-04066-GW (DFM) <br><br> **FOURTH AMENDED COMPLAINT** <br><br> (42 U.S.C. § 1983) <br><br> Courtroom: 6B <br> Judge: Hon. Douglas F. McCormick <br> Action Filed: May 14, 2021 |

## SUMMARY OF THE CASE

1. In response to crimes committed by Defendant and Defendant's coworkers, boss, and friends, Plaintiff filed grievances, a lawsuit, and sought investigations by Internal Affairs, the Inspector General, the San Luis Obispo Grand Jury, and others. When Defendant later threatened Plaintiff, Plaintiff told him he would file a grievance against him as well. Defendant then destroyed Plaintiff's property, including six boxes of legal documents in an active case. Defendant's conduct violated state law, and constituted retaliation for Plaintiff's exercise of his right to petition his government for a redress of grievances, in violation of the First Amendment to the United States Constitution.

///

## JURISDICTION

2. Jurisdiction lies under 28 U.S.C. §§ 1331 and 1343(a)(3), and 42 U.S.C. § 1983, for the claims herein that seek to redress the deprivation, under color of state law, of rights secured by the U.S. Constitution.

3. The declaratory relief requested herein is authorized by 28 U.S.C. §§ 2201 and 2202, and Fed.R. Civ. P. 57

## VENUE

4. The county of San Luis Obispo is where the events giving rise to this action occurred, which makes this judicial district the proper venue under 28 U.S.C. §§ 1391(b)(2) and 2000e3-5(f)(3).

## INTRA-DISTRICT ASSIGNMENT

5. The Western Division is proper for intra-district assignment under General Order 349 of this Court, because this is a prisoner civil rights case.

## PARTIES

6. Plaintiff was at all times relevant herein: (1) an individual and citizen of the State of California, (2) an inmate as defined in Cal. Gov't Code § 844.6, (3) under the custody and care of the California Department of Corrections and Rehabilitation (CDCR), and (4) confined at the California Men's Colony (CMC) in San Luis Obispo, California.

7. Defendant was at all times relevant herein: (1) an individual and citizen of the State of California, and (2) an agent and employee of the CDCR.

8. Defendant had a ministerial duty under California statutory and regulatory law to comply with all applicable statutes, regulations, policies, procedures, and directives.

9. Defendant is sued in his individual capacity.

## IMMUNITY

10. The acts and omissions of Defendant complained of herein constituted "corruption" as defined in Cal. Gov't Code § 822.2, because they (1) violated the non-discretionary duties imposed by the regulatory and statutory laws cited herein; and (2) evinced a failure of Defendant to exercise due care in the execution of said regulations and departmental policies.

2

Fourth Amended Complaint (2:21-CV-04066-GW-DFM)

11. The acts and omissions of Defendant complained of herein constituted "behavior that violates or is contrary to law, regulation, policy, procedures, or an ethical or professional standard," and were thus "staff misconduct" under Cal. Penal Code § 832.5, Cal. Gov't Code § 19572, and Cal. Code Regs., tit. 15, § 3084.5(g).

12. The regulations herein cited under title 15 of the California Code of Regulations had the force and effect of statutory law at all times relevant herein, as they were promulgated under a statutory delegation of authority, vested in the Secretary of Corrections, pursuant to Cal. Penal Code § 5058.

## PRIOR LAWSUITS

13. *White v. Reyes-Cortez*, C.D. Cal. No. 2:21-CV-02351-GW-DFM.

## ADMINISTRATIVE REMEDIES

14. Plaintiff exhausted his administrative remedies by timely filing a procedurally compliant grievance (# CMC-E-20-14302) regarding the acts and omissions complained of herein. Said grievance set forth the material facts alleged herein with sufficient particularity to allow an investigation into the unlawful acts and omissions of Defendant.

## REQUEST FOR JUDICIAL NOTICE

15. Pursuant to Fed. R. Evid. 201(b)(2), Plaintiff requests that this Court take judicial notice of the CDCR Department Operations Manual ("DOM"), which is published at <www.cdcr.ca.gov/regulations/cdcr-regulations/dom-toc>. The DOM sets forth "standards of conduct or guidelines for [CDCR's] employees in the conduct of their public employment," as defined in Cal. Evid. Code § 669.1. It "contains the operational and administrative policies and procedures of the Department that are intended to provide necessary instructions to staff, and to establish the consistent statewide application thereof." (DOM § 12020.8.) It "derive[s][its] authority from statutes, court orders, or regulations." (*Id.*)

16. Pursuant to Fed. R. Evid. 201(b)(2), Plaintiff also requests that this Court take judicial notice of the following cases (not the veracity of the facts therein) involving allegations of unlawful misconduct by officers Monteiro and Reyes-Cortez who, as alleged herein, committed unlawful acts which Plaintiff sought the investigation and prosecution of, and who were friends

3

and coworkers of Defendant: *Wilkins v. Samuels*, No. CV 22-2434-SVW (E), 2022 U.S. Dist LEXIS 141868, *5 (C.D. Cal. June 15, 2022) (alleging codefendant Monteiro retaliated against Plaintiff); and *Harris v. Holguin*, No. CV 18-10382-DMG (DFM), 2019 U.S. Dist LEXIS 227643, *3 (C.D. Cal. February 27, 2019) (alleging codefendant Reyes-Cortez failed to intervene when her coworker made derogatory remarks to transgender Plaintiff).

## MATERIAL FACTS

### A. Plaintiff seeks the criminal prosecution of Defendant's friends Urias and Reyes-Cortez

17. On December 24, 2019, Plaintiff's cell was searched by officers Urias and Reyes-Cortez. These officers thrashed the cell and damaged items, in violation of Cal. Code Regs., tit. 15, § 3287(a)(2). When Plaintiff asked the officers why they had disrespected his cell, they placed him in handcuffs and escorted him to a one-man holding cage. Reyes-Cortez squeezed the handcuffs on far tighter than is lawful, so as to cut off circulation, and left them on for nearly two hours, in violation of policy and state law.

18. As a result Plaintiff filed a grievance (# CMC-E-20-00149) on these officers for committing felonies in violation of Penal Code §§ 118.1, 125, 129, and 131. Plaintiff also wrote the Grand Jury of San Luis Obispo County and requested that they investigate under Penal Code § 919, which provides that "[t]he grand jury shall inquire into the condition and management of the public prisons within the county," and "shall inquire into the willful or corrupt misconduct in office of public officers of every description within the county."

19. Plaintiff also wrote and requested an investigation by the Office of the Inspector General and the State Personnel Board.

20. Plaintiff also filed a lawsuit against, among others, Reyes-Cortez for excessive force and retaliation.

21. Plaintiff also filed in the Superior Court a "Petition Alleging Officer Misconduct and Request for Charging" under Penal Code §§ 147 and 673.

22. Reyes-Cortez and Urias were coworkers and personal friends of Defendant.

23. Less than three weeks after he filed the above complaints, the same two officers again searched Plaintiff's cell and damaged, destroyed, and dishevelled his property. The next day

4

Plaintiff thus filed another grievance (# CMC-E-20-00435) on them, and again asked for a Grand Jury investigation.

**B. Plaintiff formally accuses Defendant's work supervisor of a criminal coverup**

24. Lieutenant Praim was assigned to interview Plaintiff in regards to the above grievance. When Plaintiff began to describe the retaliatory misconduct, Praim cut the interview short. He cancelled Plaintiff's grievance and authored a false report, in violation of Penal Code § 129, claiming that Plaintiff refused to discuss the matter. Plaintiff thus filed a separate grievance (# CMC-E-20-01023) on Praim, calling his actions "criminal," and that "it seems that Lt. Praim is conspiring with the named officers to cancel my [grievance] so that I can't expose rogue officers' behavior ..."

25. At all times relevant herein, Praim was the supervisor of Defendant.

**C. Plaintiff seeks the criminal prosecution of Defendant's friend Monteiro**

26. While on the recreation yard about three weeks later, on March 23, 2020, officer Monteiro walked up to Plaintiff and falsely claimed to have just witnessed him take an item from an inmate through the inmate's cell window. This claim was immediately proven false by Monteiro's own coworkers, who went to the cell from which the item was allegedly passed and discovered that it was locked and empty. Monteiro nevertheless used his "observation" as a pretext to thrash Plaintiff's cell. Plaintiff thus filed a grievance (# CMC-E-20-00944) against Monteiro, and requested that Internal Affairs investigate him for "retaliation and egregious abuse of governmental powers."

27. Monteiro was at all times relevant herein a coworker and personal friend of Defendant. They regularly worked together and were observed by Plaintiff, other inmates, officers, and staff on the recreation yard discussing matters on a regular basis.

28. On April 7, 2020, two weeks after Plaintiff filed his grievance against him, Monteiro retaliated. He insulted and then used excessive force against Plaintiff. The next day Plaintiff filed another grievance (# CMC-E-20-01110) against Monteiro for this misconduct, and asked for the matter to be investigated by Brenda Crowding, CDCR's Deputy Director of Internal Affairs.

///

## D. Plaintiff calls for the firing and prosecution of Defendant's friend Scott

29. Three days later, on April 10, 2020, Plaintiff was in the dining hall when he observed an officer unlawfully sneak up behind an inmate who was seated, Mr. Rawls, snatch him into a chokehold, and strike him in the face with the butt of his steel baton. Other officers, particularly officer Scott, then joined in and brutally assaulted Rawls.

30. At this time Plaintiff was alleged to have yelled "This is bullshit [Sergeant]! He didn't deserve that! What are you going to do about your staff? We aren't going to stand for this! You are going to lose your fucking job Scott!"

31. Plaintiff later sought the criminal prosecution of Scott and the other officers for felony assault and battery, via a confidential letter he sent to attorney Victoria Medrano of the San Luis Obispo Defenders.

32. Officer Scott was a coworker and personal friend of Defendant.

33. Neither during nor immediately after the incident was Plaintiff detained, handcuffed, asked for his ID card, or otherwise reprimanded for disruptive behavior. Officers present later stated on the record that they did not feel threatened by Plaintiff or other inmates there.

34. When the incident was over, all inmates including Plaintiff returned to their cells. But nearly four hours later Plaintiff was removed from his housing unit and told he was going to Administrative Segregation (AdSeg) for "inciting a riot," and would be issued a Rules Violation Report (RVR).

35. Despite a lack of evidence, Plaintiff was found guilty of his RVR and assessed a five-month term in a Security Housing Unit (SHU) and a 61-day forfeiture of good-time credit. His SHU term was suspended and he was released back to the general population after about two months. Plaintiff filed a grievance (# CMC-E-20-05896) regarding the unlawful procedures and findings of the RVR hearing, and requested that the matter be referred to the Office of Internal Affairs.

## E. Plaintiff threatens Defendant with legal action for felony misconduct

36. While Plaintiff was in the holding cage awaiting escort to AdSeg, Defendant boxed up Plaintiff's property.

37. Defendant was required by law, under Cal. Code Regs., tit. 15, § 3190 and DOM § 54030.5, to inventory and document Plaintiff's property, and any items confiscated, and do so using a Form 1083, "Inmate Property Inventory." Defendant refused to do so. Said form lists scores of allowable items of property, each with a box for the quantity possessed to be recorded, as well as an area for listing confiscated items and their disposition. It also requires the inmate's signature to verify its accuracy.

38. Instead Defendant approached Plaintiff and told him to sign a "Property Search Receipt/Notice" which listed some of the items Defendant confiscated while packing up Plaintiff's property. The form was created by an unknown CMC official, was unlawful pursuant to the above authorities, was not approved by CDCR, and was meant to only be used to record items confiscated in a cell search.

39. Plaintiff told Defendant that he would not sign the receipt because it was not a 1083 and did not list his property.

40. Defendant told Plaintiff that if he did not sign the receipt he would lose all of his property. Plaintiff replied that if Defendant did that, he would file a grievance and sue Defendant. Defendant left.

41. It is unlawful for an officer to destroy an inmate's property for not signing a 1083 form, and it was unlawful for Defendant to threaten Plaintiff with breaking the law.

**F. Defendant retaliates against Plaintiff by unlawfully destroying his property**

42. Almost a month later, on May 8, 2020, Defendant visited Plaintiff in AdSeg, told him he had "consolidated" Plaintiff's property, and gave him a Form 1083 to sign.

43. Because Plaintiff had not yet been assessed a SHU term, or put up for transfer, there was no lawful basis for Defendant to go through Plaintiff's property, "conssolidate" it, and inventory it once again.

44. On the 1083 form he asked Plaintiff to sign, Defendant failed to check the box marked "Legal Materials." This would normally indicate that an inmate had none. But instead, Defendant used two separate cell search receipts which listed items he confiscated, including six boxes of legal documents he claimed exceeded the property limits. And although Defendant

7

circled the letter codes on the receipts designating the disposition of all the other items confiscated, he left this portion blank for the six boxes. There was thus no record on the 1083 that Plaintiff ever had the boxes, and no record on the receipts of why or how they were disposed of. This falsification of government records by Defendant was a felony under Penal Code §§ 134, 135, and 153.

45. The legal documents in the six boxes pertained to several active cases, and the various grievances, letters, and complaints against Defendant's above coworkers and friends.

46. It is unlawful to destroy excess legal documents for any active case an inmate has. Said documents must be stored by the institution, and the inmate allowed weekly access to them, per DOM § 54030.10.2.

47. On the unlawful cell search receipts he used, Defendant listed as contraband several items that were not. Defendant also failed to list several items of property that Plaintiff possessed on the 1083 form he authored. For these reasons, Plaintiff refused to sign the 1083.

48. Soon thereafter, and prior to his release from AdSeg a few weeks later, Plaintiff's property, including his six boxes of legal documents, was destroyed by Defendant.

49. Plaintiff learned that Defendant destroyed his property upon release from AdSeg, when all of his remaining property was reissued to him.

50. Plaintiff then filed a written complaint against Defendant with Internal Affairs, and a timely grievance, which was properly exhausted.

## CLAIM FOR RELIEF

### Retaliation for the Exercise of a Constitutionally-Protected Right

(First Amendment to the U.S. Constitution; 42 U.S.C. § 1983)

51. Plaintiff refers to and incorporates herein by reference paragraphs 17 through 50.

52. Plaintiff had and has a right to petition his government for a redress of grievances, under the First Amendment to the United States Constitution. Plaintiff's above grievances, letters, petitions, lawsuit, and verbal complaints against Defendant and Defendant's coworkers, supervisor, and personal friends constituted an exercise of this right.

53. But for Plaintiff's exercise of his constitutionally-protected right, Defendant would

Fourth Amended Complaint (2:21-CV-04066-GW-DFM)

not have committed the aforementioned unlawful acts and omissions against Plaintiff. Alternatively, Plaintiff's exercise of his constitutionally-protected right was a motivating factor in Defendant's unlawful acts and omissions against Plaintiff.

54. Defendant's tortious conduct was unrelated to prison needs and did not reasonably advance a legitimate correctional goal.

55. Defendant's tortious conduct would chill a person of ordinary firmness in the exercise of their First Amendment right to petition for a redress of grievances.

56. As a direct and proximate result of Defendant's unlawful retaliatory misconduct, Plaintiff was caused at various times to endure physical and emotional pain and suffering in the form of, inter alia, emotional distress, anxiety, anguish, nausea, stomachache, headache, insomnia, fatigue, anger, fear, muscle tension, loss of appetite, fright, shock, nervousness, indignity, apprehension, depression, grief, and terror.

## VERIFICATION

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief and, as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all triable issues herein.

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

For compensatory damages in an amount according to proof;

For punitive and exemplary damages in an amount to be determined at trial;

For an order declaring the rights and legal relations of the parties;

For an award of costs of suit incurred;

For an award of attorney fees, costs, and disbursements, if any; and

For any other relief this Court deems just and proper.

Dated: December 25, 2024                    Respectfully submitted,

PEDRO WHITE SR.
Plaintiff in pro se

Fourth Amended Complaint (2:21-CV-04066-GW-DFM)

# PROOF OF SERVICE BY MAIL
## [CCP §§ 1013(a), 2015.5]

STATE OF CALIFORNIA, COUNTY OF _San Joaquin_

    I am a citizen of the County of _San Joaquin_, State of California. I am a citizen of the United States of America. I am over the age of eighteen (18) and not a party to this action. I am a resident of the County of San Joaquin, CDCR# _A15074_

    My address is:

        California Health Care Facility

        _P.O. Box 213040_

        Stockton, CA 95213

    On _Dec 29_, 2024, I served via United States Mail a copy of the following document(s): _Fourth Amended Complaint_

    The above-noted legal document(s) was placed in a sealed envelope, with postage thereon fully prepaid, addressed to the person at the address indicated below pursuant to California Code of Civil Procedure Section 1013. I placed the envelope or package in a mailbox or other like facility addressed to:

_Isha Vazirani_
_Deputy Attorney General_
_455 Golden Gate Ave., Ste. 11000_
_San Francisco, CA 94102_

_Clerk, U.S. District Court_
_255 East Temple St, Room 180_
_Los Angeles, CA 90012_

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. This document was executed on _12-29_, 2024 in San Joaquin County, California.

_Pedro White Sr._

Type or Print Name

_[signature]_

Signature

legal mail

## California Health Care Facility

Name: Robe White X    CDCR # A15074

Facility Chef Stockton Bldg.: Pwc    Cell: 202

P.O. Box: 213040

Stockton, CA 95213

**INMATE MAIL**



Clerk, US District Court

355 East Temple St Room 180

Los Angeles CA 90012

quadient

FIRST-CLASS MAIL
IMI
$000.97⁹
12/30/2024  ZIP 95215
043M32206974

US POSTAGE

JAN - 2 2025

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY

12/29/24

98394