ROB BONTA
Attorney General of California
KYLE A. LEWIS
Supervising Deputy Attorney General
ISHA VAZIRANI
Deputy Attorney General
State Bar No. 354914
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3478
 Fax:  (415) 703-5843
 E-mail:  Isha.Vazirani@doj.ca.gov
*Attorneys for Defendant*
*Sanchez*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| **WHITE,** <br><br> Plaintiff, <br><br> **v.** <br><br> **SANCHEZ,** <br><br> Defendant. | 2:21-cv-04066-GW-DFM <br><br> **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Judge:  The Honorable Douglas F. McCormick <br> Trial Date:  Not Set <br> Action Filed: 5/14/2021 |

## INTRODUCTION

On April 10, 2020, Plaintiff White ("Plaintiff"), a state prisoner proceeding in this action *pro se*, incited a riot at California Men's Colony (CMC), where he was housed.  Plaintiff was transferred from his housing unit to administrative segregation as a result, and in the process of Plaintif's transfer, Defendant Sanchez ("Defendant"), a correctional officer at CMC, inventoried Plaintiff's property pursuant to CDCR and institutional regulations.  In his operative Fourth Amended Complaint ("4AC"), Plaintiff claims that Defendant violated the First Amendment when he caused several boxes of Plaintiff's property to be destroyed in retaliation

for Plaintiff's threat to file a grievance, or Plaintiff's grievances against other correctional staff at CMC.

Defendant is entitled to summary judgment on Plaintiff's First Amendment claim. The undisputed facts establish that Defendant did not retaliate against Plaintiff in violation of his First Amendment rights. Plaintiff cannot show that Defendant took adverse action against him, as Plaintiff's allegations that Defendant destroyed his property are unsupported and speculative. Additionally, even if Plaintiff can show that Defendant took adverse action against him, he cannot prove that such action was due to Plaintiff's threat to file a grievance against Defendant, as alleged in Plaintiffs 4AC. Furthermore, Plaintiff cannot prove that his rights were chilled as a result of Defendant's conduct. Defendant is also entitled to qualified immunity here because no reasonable officer would know that the conduct alleged in Plaintiff's 4AC would violate Plaintiff's rights.

Accordingly, the Court should grant Defendant's motion for summary judgment and enter judgment in his favor.

## STATEMENT OF THE CASE

Plaintiff's original complaint was filed on May 14, 2021. (ECF No. 1.) Over the course of the litigation, Defendant has attacked Plaintiff's successive complaints, resulting in numerous dismissals. (ECF Nos. 11,43, 73.) His operative Fourth Amended Complaint ("4AC") was filed on January 2, 2025. (ECF No. 80).

In his 4AC, Plaintiff alleges that Defendant retaliated against him in violation of the First Amendment on April 10, 2021 at CMC. Specifically, Plaintiff claims that Defendant "failed to follow state regulations and the CDCR Department of Operations Manual when he inventoried Plaintiff's property during Plaintiff's move to administrative segregation." (ECF No. 80 at pp. 6-9; ECF No. 82 at pp. 1-2.) Plaintiff further claims that Defendant threatened Plaintiff with the loss of his property if he did not sign the form, and destroyed Plaintiff's property because Plaintiff threatened to file a grievance or lawsuit against him. (ECF No. 80 at pp. 6-

2

9; ECF No. 82 at p. 2.)  Upon screening, the Court found that Plaintiff stated a cognizable First Amendment claim against Defendant.  (ECF No, 82 at p. 2.)

Defendant Sanchez now moves for summary judgment on the First Amendment claim.

## LEGAL STANDARD

Summary judgment is appropriate if, reviewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  To prevent the entry of summary judgment, Plaintiff must present competent evidence showing that there are genuine issues of material fact whether Defendant violated his rights.  *Id*.  In doing so, Plaintiff cannot rest solely on conclusory allegations, but must present "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  A fact is material only if it affects the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the non moving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

Additionally, not every factual dispute will defeat a motion for summary judgment.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380, (2007); *see also Celotex Corp. v. Caltrett*, 477 U.S. 317, 322, (1986) (summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of

evidence or evidence that is merely colorable ... does not present a genuine issue of material fact" but rather there "must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion."); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the non-moving party relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

## ARGUMENT

Plaintiff cannot establish that Defendant retaliated against him in violation of the First Amendment.  No evidence shows that Defendant took adverse action against Plaintiff by destroying his property or otherwise causing it to be destroyed.  Additionally, even if Defendant did take action against Plaintiff, such action resulted from Defendant's furthering the legitimate correctional goal of enforcing institutional regulations concerning inmate property, not the result of Plaintiff's protected conduct.  Further, Plaintiff was not chilled as a result of Defendant's conduct.  Lastly, Defendant is entitled to qualified immunity. For these reasons, Defendant is entitled to summary judgment.

## I.    DEFENDANT DID NOT RETALIATE AGAINST PLAINTIFF IN VIOLATION OF THE FIRST AMENDMENT.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  The "plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury . . . ." *Hartman v. Moore,* 547 U.S. 250, 259 (2006).  More specifically, a plaintiff must show his constitutionally protected conduct was the "substantial or motivating

4

factor" for the alleged retaliatory action. *See Brodheim v. Cry*, 584 F.3d 1262, 1271(9th Cir. 2009)(internal quotation marks and citation omitted). Moreover, the plaintiff bears the burden of proving the absence of legitimate correctional goals for defendant's challenged conduct. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *see also Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

**A. Defendant Did Not Take Adverse Action Against Plaintiff Because He Properly Inventoried Plaintiff's Property and Did Not Cause Property to Be Destroyed.**

Defendant did not take adverse action against Plaintiff, and, consequently, cannot be found liable for retaliation in violation of the First Amendment. Rather, Defendant properly inventoried Plaintiff's property in accordance with institutional regulations and did not cause Plaintiff's property to be destroyed. Defendant is entitled to summary judgment.

Although Plaintiff alleges in his 4AC that Defendant destroyed his property (ECF No. 80 at pp. 7-8), his allegations are unsupported and speculative. Plaintiff alleges that "prior to his release from AdSeg . . . Plaintiff's property, including his six boxes of legal documents, was destroyed by Defendant." (ECF No. 80 at p. 8.) He further claims that he "learned that Defendant destroyed his property upon release from AdSeg, when all of his remaining property was reissued to him." (*Id*.) Plaintiff fails to detail in his 4AC why he believes Defendant to have destroyed his property. (*See generally* ECF No. 80.) Plaintiff's own testimony further proves that he cannot support his allegation that Defendant destroyed his property:

> Q.   And can you remind me again, why did you file this lawsuit against the defendant?
> A.   Because he illegally destroyed my property.
> Q.   Did you --- do you know when he destroyed your property?
> A.   No, ma'am.
> Q.   Do you know how he destroyed your property?
> A.   No, ma'am.

Q.   Did you – just so that I'm clear, see him destroy your property?
A.   No, ma'am.
Q.   So why do you think he destroyed your property, just so I understand it?
A.   Because his name is signed on this 1083 that he consolidated my property . . . . he was the last one to have my property.  So he's responsible for my property.

(Deposition of Plaintiff, Decl. of I. Vazirani Supp. Def.'s Mot Summary J. (Vazirani Decl.), Ex. A at pp. 29-30.)

Plaintiff went on to testify on whether he knew that Defendant destroyed his property:

Q.   Okay.  And how did defendant Sanchez cause your property to be destroyed?
A.   He was responsible for my property when he took it.  And when I got out of the hole, all my property was not there.

(Vazirani Decl., Ex. A at p. 46.)

Plaintiff's own testimony indicates that he cannot support his allegation that Defendant destroyed his property with facts or evidence.  He simply speculates that Defendant destroyed his property, with no evidentiary support.  However, Defendant did not remove any paperwork from the boxes originally in Plaintiff's Cell.  (Declaration of J. Sanchez (Sanchez Decl.) at ¶ 2.)  Following Defendant's inventory of Plaintiff's property, which occurred pursuant to his supervisor's directions, the property was securely stored within the institution.  (Sanchez Decl. at ¶ 3.)  Plaintiff offers no evidence to dispute this, other than his own conjecture about who was responsible for his property.

After Defendant later approached Plaintiff to ask him how he wished his excess property to be disposed of, again pursuant to his supervisor's direction and institutional regulations, Plaintiff responded "fuck you," which effectively concluded Defendant's interactions with Plaintiff or his property.  (Sanchez Decl. at

6

¶ 4.)  No evidence supports Plaintiff's contention that Defendant destroyed Plaintiff's property or somehow caused it to be destroyed, that Defendant acted outside institutional or CDCR regulations, or that Defendant retaliated against Plaintiff for a threat to file a grievance or a lawsuit.

### B.   Defendant Did Not Destroy Plaintiff's Property Because of Plaintiff's Threat to File a Grievance or Lawsuit.

Defendant did not destroy Plaintiff's property, or cause it to be destroyed, because of Plaintiff's constitutionally-protected activity.  Rather, the amount of property possessed by Plaintiff fell outside what institutional regulations allowed. Inmates are generally allowed "legal materials . . . consistent with the six cubic foot limitations" and one additional cubic foot of property consisting of legal materials pertaining to "active cases."  (Vazirani Decl. Ex. B.)  When Defendant inventoried Plaintiff's property, he had property in excess of what was permitted.  (Sanchez Decl. ¶ 2.)  Plaintiff was offered the opportunity to have his excess property stored in Reception and Release, but responded to the offer with "fuck you".  (Sanchez Decl. at ¶ 4.)  Defendant did not interact with Plaintiff's property following that point.  (Sanchez Decl. at ¶¶ 4-5.)  Plaintiff cannot dispute this point.  And to the extent that Plaintiff's property was subsequently destroyed, it was not the result of Defendant's retaliation against him for threatening to file a grievance or lawsuit, but instead was because of Plaintiff's failure to express that he wished his property to be stored.  Plaintiff has no evidence regarding how or why his property was destroyed aside from his own speculation, which is insufficient to attach constitutional liability.  *Beckett v. Scalia*, 2023 U.S. Dist. LEXIS 236919 (E.D. Cal.); see also *McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011). Accordingly, Defendant did not retaliate against Plaintiff by causing his property to

7

be destroyed because of Plaintiff's constitutionally-protected activity and therefore did not violate Plaintiff's rights under the First Amendment.[1]

### C.  Defendant's Conduct Was Supported by a Legitimate Correctional Goal.

When considering the elements of First Amendment claims, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807.  Defendant's conduct, throughout his interaction with Plaintiff's property, was supported by the legitimate correctional goal of following institutional regulations.  As discussed, Defendant did not destroy Plaintiff's property or otherwise cause it to be destroyed.  Nevertheless, even if Defendant did cause it to be destroyed, it was in furtherance of the legitimate correctional goal of adhering to institutional regulations concerning inmates' property.  The CDCR Department Operations Manual limits the property inmates are allowed to six cubic feet of legal materials, plus one cubic foot of legal materials pertaining to active cases. (Vazirani Decl. Ex. B.)  Material pertaining to active cases in excess of the allowed one cubic foot may be stored. (*Id*.)  Plaintiff did not accept Defendant's offer to have his excess property stored in CMCs Reception and Release. (Sanchez Decl. at ¶ 4.)  Defendant then approached his supervisor to recount his interaction with Plaintiff and determine next actions, all the while adhering to institutional regulations pertaining to inmates' property. (Sanchez Decl. at ¶4; Vazirani Decl. Ex. B.)  Accordingly, Defendant's conduct throughout was supported by the legitimate correctional goal of following institutional regulations regarding inmate property.

---

[1] To the extent that Plaintiff claims that Defendant destroyed his property, or otherwise caused his property to be destroyed, because of Plaintiff's grievances and lawsuits against other correctional staff members, Defendant is not familiar with the individuals named in Plaintiff's complaint (Sanchez Decl. at ¶ 5) and Plaintiff cannot prove that Defendant is familiar with those individuals such that he would be aware of Plaintiff's grievance and legal activity against them. (*See generally* Vazirani Decl. Ex. A.)

### D.   Defendant's Conduct Did Not Chill Plaintiff's Exercise of His First Amendment Rights.

Plaintiff cannot establish that Defendant's conduct chilled the exercise of his First Amendment Rights, or that it would have chilled the First Amendment activity of a person with ordinary firmness.  Plaintiff provides no evidence to prove that Defendant's conduct caused, or would have caused, a chilling effect.  (*See generally* ECF No. 80.)  In fact, following the incident alleged in Plaintiff's complaint, he has actively litigated this and another lawsuit.  (*White v. Gastelo*, et al., 2:21-cv-02351 GW (DFM).)  While not wholly indicative that Plaintiff's First Amendment rights were not chilled, in the absence of *any* evidence of a chilling effect, that Plaintiff has engaged in lengthy litigation against CDCR officials shows that he continues to exercise his free speech rights.  Accordingly, Defendant's conduct did not chill Plaintiff's exercise of his First Amendment Rights and would not have chilled the First Amendment activity of a person of ordinary firmness.

## II.   DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY.

In this case, qualified immunity shields Defendant from liability for violating Plaintiff's First Amendment rights.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Qualified immunity exists to shield an officer from liability for 'mere mistakes in judgment, whether the mistake is one of fact or one of law.'" *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)).

In determining whether an officer is entitled to qualified immunity, courts consider whether (1) there has been a violation of a constitutional right and (2) that right was clearly established at the time of the officer's alleged misconduct. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*).  A government

official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). No case directly on point is necessary; only existing precedent must have placed the statutory or constitutional question beyond debate. *Id.* (citations omitted). For this inquiry, only binding precedent is relevant. *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004)).

Under the first prong of the analysis, Defendant is entitled to qualified immunity because no constitutional violation occurred. As demonstrated above, Defendant took no adverse action against Plaintiff because of his constitutionally-protected activity, Defendant's conduct was supported by a legitimate correctional goal, and Plaintiff's rights were not chilled. Moreover, the second prong is also satisfied, under which Plaintiff bears the burden of proving the law was clearly established. *Davis v. Scherer,* 468 U.S. 183, 197 (1984). Here, the issue presented is whether inmates have the right to be free from the destruction of their property when they possess excess property and do not request that such property be stored. To Defendant's knowledge, no case law supports this assertion, and indeed, enforcement of inmate property regulations is a legitimate correctional action. *Keyes v. Escobedo*, 2023 U.S. Dist. LEXIS 230309 (C.D. Cal.). Accordingly, Defendant is entitled to qualified immunity.

## CONCLUSION

Defendant's motion for summary judgment should be granted. Plaintiff cannot prove that Defendant retaliated against him in violation of the First Amendment. Defendant did not take adverse action against Plaintiff, as he did not destroy Plaintiff's property or cause it to be destroyed. Even if Defendant did take action concerning Plaintiff's property, such action was not because of Plaintiff's

constitutionally-protected activity; rather, it was in furtherance of the legitimate correctional goal of following institutional regulations regarding inmates' property. Furthermore, Plaintiff was not chilled as a result of Defendant's conduct. Finally, Defendant is entitled to qualified immunity. For these reasons, Defendant is entitled to summary judgment.

Dated: May 29, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
KYLE A. LEWIS
Supervising Deputy Attorney General

*/s/ Isha Vazirani*
ISHA VAZIRANI
Deputy Attorney General
*Attorneys for Defendant
Sanchez*

LA2022401620
45099114.docx

11