**LAW OFFICES OF DALE K. GALIPO**
Cooper Alison-Mayne, SBN 343169
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Email: cmayne@galipolaw.com

*Attorney for Plaintiff Pedro White, Sr.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO WHITE, SR.,<br><br>Plaintiff,<br><br>v.<br><br>J. SANCHEZ,<br><br>Defendant. | Case No.: 2:21-cv-04066-GW-DFM<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SANCHEZ'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: George H. Wu<br>Mag. Judge: Douglas F. McCormick<br>Complaint Filed: May 14, 2021<br>Trial Date: None set |

## I.    INTRODUCTION

On April 10, 2020, Pedro White was taken to administrative segregation, and Officer Sanchez packed up his cell. Among the property Sanchez packed were six boxes of legal files from White's active cases, including the grievances and complaints White had filed against officers Sanchez worked with. Sanchez told White to drop those complaints and grievances, and he threatened that if White did not sign the inventory form, he would lose all of his property. White answered that if Sanchez destroyed his property, he would file a grievance against Sanchez, as well. On May 8, Sanchez returned and told White he had "consolidated" the property down to three boxes. On June 19, White was released back to the general population, and his remaining property was

1
PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

reissued to him. The six boxes of legal documents were gone, and he has never seen them again. A reasonable jury could find that Sanchez destroyed the boxes because (1) he was the last person documented to have custody of the files; (2) no disposition of the files was ever recorded and no explanation for their disappearance has ever been offered; and (3) they vanished only weeks after Sanchez threatened to destroy them. The threat and the destruction that followed it were both retaliation for White's protected activity.

Sanchez moves for summary judgment, making five arguments: (1) White cannot prove adverse action because he did not witness the destruction of his property and cannot say when or how it occurred; (2) any loss was caused not by retaliation but by White's own failure to say how he wanted his property handled; (3) Sanchez's conduct served the legitimate correctional goal of enforcing inmate property limits; (4) White cannot show a chilling effect because he has continued to litigate; and (5) Sanchez is entitled to qualified immunity. (ECF 97-1 at 5–10.) Each argument fails for the reasons discussed below. Therefore, the motion should be denied.

## II.    STATEMENT OF RELEVANT FACTS

Beginning on or about December 24, 2019, White filed a series of inmate grievances (CDCR 602s), citizen complaints, and other petitions complaining of misconduct by correctional officers at CMC Facility C, including Officers Reyes-Cortez, Urias, Monteiro, and Scott. (PAMF 1.) He also sought investigations by the San Luis Obispo County Grand Jury, the Office of the Inspector General, and the State Personnel Board. (PAMF 2.)

Officers Reyes-Cortez, Urias, Monteiro, and Scott worked at CMC Facility C with Sanchez. (PAMF 3.) White saw Sanchez socializing with Reyes-Cortez and Monteiro together on the yard several times. (PAMF 4; see also PAMF 5–6.)

On the morning of April 10, 2020, White witnessed Officer Scott and other officers use force on a seated inmate in the CMC dining hall. Believing the force excessive, he

reported it, including by complaint to the San Luis Obispo Public Defender's Office. (PAMF 7.)[1]

During ad-seg processing, Sanchez packed White's cell property and recorded seven boxes and three bags on a CDCR-1083, checking the "Legal Materials" box. (PAMF 10–11.) The boxes held the working files for White's active cases, including the grievances and complaints against Sanchez's coworkers. (PAMF 12.) Under CDCR's regulations, legal materials for an inmate's active cases carry a one-cubic-foot allowance beyond the standard six-cubic-foot property limit, and active-case legal material beyond that allowance must, on the inmate's request, be stored by the institution or else handled under the disposition procedures of section 3191(c). Cal. Code Regs. tit. 15, §§ 3161, 3191(c) (Mayne Decl. Ex. A). Stored legal material must be kept in a designated storage area, logged, sealed in boxes, and made available to the inmate weekly. DOM § 54030.10.2 (Vazirani Decl. Ex. B, ECF 97-4 at 27–28). White initially refused to sign the form because he could not see the property on the cart and could not verify the form's accuracy. (PAMF 13.) Sanchez told White he needed to drop the grievances and complaints against the officers Sanchez knew and worked with, and threatened that if White did not sign, he would lose all of his property. (PAMF 14–15.) White responded that if Sanchez destroyed the property, he would file a grievance against him and sue him. (PAMF 16.) However, fearing the loss of everything he owned, White signed the document despite his reservations. (PAMF 17.)

On May 8, 2020, Sanchez told White he had "consolidated" the property, including legal files from several active cases, down to three boxes, and presented a second CDCR-1083. (PAMF 18.) Sanchez never offered any options for the dispensation of the legal

---

[1] The assertion that White "incited a riot" (ECF 97-1 at 1) is supported by no cited evidence; it appears in no fact in Sanchez's Statement of Uncontroverted Facts and in no declaration, and White denies it under oath. (PAMF 9.) He was not detained, handcuffed, or reprimanded at the scene, and he was not removed from his housing unit until nearly four hours later, when he was taken to administrative segregation. He did not incite a riot. (PAMF 8–9.)

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

documents or other property. He never said it could be sent home, donated, or stored, and never asked how White wanted it handled. (PAMF 19.) According the prison regulations, disposition of unauthorized property turns on the inmate's signed election of a disposition method, and if he makes none, staff shall document that fact and determine the method of disposition from enumerated lawful options, such as mailing the property home, returning it to the sender, or donating it. Cal. Code Regs. tit. 15, § 3191(c) (Mayne Decl. Ex. A). The May 8 form omitted the "Legal Materials" designation that the April 10 form carried. (PAMF 21.) The accompanying Property Search/Receipt Notice lists "6 Boxes of legal Paperwork" with the disposition column blank and no inspecting officer's signature, while trivial items on the same paperwork were assigned dispositions. (PAMF 22.)

In contravention of prison regulations, the six boxes of legal materials were never logged, sealed, or stored; White was never given weekly access; and no disposition was ever recorded. (PAMF 24.) When White was released to the general population on June 19, 2020, his remaining property was reissued without the six boxes, and they have never been returned. (PAMF 25.) Sanchez was the last person documented to have custody of the six boxes. (PAMF 26.) Staff who hold the property of an inmate housed in administrative segregation assume responsibility for that property, and it must be returned to him upon release back to general population. DOM §§ 54030.6, 54030.13.2(a)(4) (Vazirani Decl. Ex. B, ECF 97-4 at 23, 30).

The loss made White's grievances and lawsuits far harder to pursue, set his cases back, and forced him to try to reconstruct records he had already assembled. (PAMF 28.)

The core facts also do not depend on White's word alone: the seizure, the consolidation, the vanished legal-materials designation, and the blank disposition all appear on Sanchez's own forms, and the relationship Sanchez had with the officers against whom White was filing grievances and complaints appear in Sanchez's own declaration.

On this record, drawing all reasonable inferences in White's favor, a jury could reasonably infer that Sanchez was friends with some or all of the officers White had

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

grieved against, and that Sanchez is responsible for the destruction of the six boxes of legal documents.

## III.   LEGAL STANDARD

Summary judgment is proper only if no genuine dispute of material fact exists. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must draw all reasonable inferences for the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

A prison retaliation claim has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Causation requires that the protected conduct have been a "substantial" or "motivating" factor in the defendant's conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

## IV.   ARGUMENT

### A.   A Reasonable Jury Could Find That Sanchez Took Adverse Action Against White

Sanchez argues that White cannot prove adverse action because he did not see the destruction of his documents and cannot say when or how it occurred. (ECF 97-1 at 5–6.) This argument fails for two reasons.

First, Sanchez's *threat* to destroy White's property is sufficient to show adverse action. *Brodheim*, 584 F.3d at 1270 ("[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."). Sanchez's demand that White drop his grievances, coupled with the warning that White would lose all of his property if he did not sign (PAMF 14–15), is adverse action without regard to what later happened to the boxes.

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Second, the destruction is established by evidence. White is not required to prove his case by direct evidence; circumstantial evidence is acceptable and is in fact the norm in retaliation cases. *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003); *see also Watison*, 668 F.3d at 1114 (direct evidence of retaliatory intent is rarely available). The documents establish the chain of custody: Sanchez took seven boxes and three bags on April 10 (PAMF 10); Sanchez reduced them to three boxes on May 8 (PAMF 18); the six boxes of legal paperwork appear on the May 8 receipt with no recorded disposition and no inspecting officer's signature (PAMF 22); the boxes disappeared by the time White was released six weeks later (PAMF 25); and the last documented custodian is Sanchez (SUF 11; PAMF 26). CDCR's own rules made a recorded disposition mandatory, but CDCR does not have such a record. Cal. Code Regs. tit. 15, § 3191(c) (Mayne Decl. Ex. A). From this evidence, a reasonable jury could conclude that Sanchez destroyed or otherwise disposed of the six boxes.

Therefore, this portion of the motion should be denied.

**B.     A Reasonable Jury Could Find That Sanchez Acted Because of White's Protected Conduct**

Sanchez next argues that the property was not destroyed in retaliation. Sanchez claims he offered White the choice to have the excess property disposed of, sent home, or stored, White responded only "fuck you," and any later loss therefore flowed from White's own failure to choose. (ECF 97-1 at 7.) White denies every part of that account under oath. Sanchez never offered any options, never asked how White wanted his property handled, and White never said "fuck you." (PAMF 19–20.) The Court cannot accept the movant's version of the facts at this stage, *Tolan*, 572 U.S. at 656–57, so Sanchez's argument fails.

On White's evidence, the jury would not even need to infer motive, because Sanchez's statements to White provide direct evidence of motive. On April 10, Sanchez told White to drop the grievances and complaints against the officers he knew and worked with and threatened to destroy White's property, including the grievances and complaints

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Sanchez wanted White to drop. (PAMF 14–15.) A demand to abandon protected activity, made while threatening to destroy the documents containing that activity, is direct evidence of retaliatory motive. White's response, that he would sue Sanchez himself, is also protected conduct. *Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017).

The timing of the events that followed completes the picture. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent."). Sanchez's threat to destroy White's property came the same day White witnessed and reported Officer Scott's use of force.  Within weeks of Sanchez's threat, the six boxes disappeared, with no record of their disposition and no explanation. The proximity in time between Sanchez's threat and the disappearance of the documents, combined with the absence of any record or explanation for what happened to them, permits a reasonable inference that the destruction was retaliation, not coincidence. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (intervals of "three to eight months" can support the inference).[2]

Finally, CDCR's own regulations refute the theory that White's silence caused the loss. Even where an inmate makes no disposition election, staff may not destroy property by default; they "shall document that fact and determine the method of disposition" from the enumerated lawful options. Cal. Code Regs. tit. 15, § 3191(c). No such documentation is in the record. (PAMF 22, 24.)

## C.    Destroying Legal Materials That CDCR's Own Rules Required Be Stored Advances No Legitimate Correctional Goal

Next, Sanchez argues that his conduct was supported by the legitimate correctional goal of enforcing inmate property limits. (ECF 97-1 at 8.) This argument fails for two

---

[2] Sanchez's asserts that he "is not familiar with" the officers named in the complaint and that White cannot prove Sanchez knew of the grievances against them. (ECF 97-1 at 8 n.1.) This argument fails for two reasons. First, both White's earlier grievances against those officers *and his threat to grieve and sue Sanchez* are protected conduct, and a reasonable jury could find that either act motivated Sanchez. Second, there is ample evidence that Sanchez knew the officers and knew about the grievances. (PAMF 3–6, 14.)

reasons. First, destroying White's legal materials violated CDCR's own binding rules, which required the institution to store the excess legal materials, to document any disposition of them, and to return White's property upon his release from ag-seg. Cal. Code Regs. tit. 15, §§ 3161, 3191(c) (Mayne Decl. Ex. A); DOM §§ 54030.6, 54030.10.2, 54030.13.2(a)(4) (Vazirani Decl. Ex. B, ECF 97-4 at 23, 27–28, 30). Conduct that violated the rules defining lawful enforcement of the property limits cannot have served the goal of enforcing them. Second, on White's evidence a reasonable jury could find that the proffered justification was a pretext for retaliation.

CDCR's rules state that excess legal material is to be stored by the institution or dispositioned under section 3191(c), with a designated storage area, a log, sealed boxes, and weekly access. Cal. Code Regs. tit. 15, §§ 3161, 3191(c) (Mayne Decl. Ex. A); DOM § 54030.10.2 (Vazirani Decl. Ex. B, ECF 97-4 at 27–28). Staff assume responsibility for the property of an inmate held elsewhere and must return it upon his release to general population. DOM §§ 54030.6, 54030.13.2(a)(4) (Vazirani Decl. Ex. B, ECF 97-4 at 23, 30). Disposition of unauthorized property requires the inmate's signed election or a documented staff determination. Tit. 15, § 3191(c). None of that happened here: no storage log, no sealed boxes, no weekly access, no disposition record, and most importantly, no return of the documents to White. (PAMF 24.)

Additionally, whether Sanchez's asserted justification was genuine or a pretext for retaliation is a question for the jury. A proffered penological justification may be shown to be "a cover or a ruse," and officials "may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process" when the retaliatory character of the action is genuinely disputed. *Bruce*, 351 F.3d at 1289. The Ninth Circuit reversed summary judgment on a comparable record in *Shepard v. Quillen*, 840 F.3d 686 (9th Cir. 2016). There, inconsistencies in the paperwork accompanying an officer's claimed regulation-based justification could persuade a jury that the officer abused the regulation and its form procedure "as a cover or a ruse to silence and punish" the prisoner. *Id.* at 690–91 (quoting *Bruce*, 351 F.3d at 1289). Sanchez's paperwork bears

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

the same hallmarks: a "Legal Materials" designation checked on April 10 and gone on May 8, and a disposition column completed for gloves and shoes but blank for six boxes of legal files. (PAMF 11, 21–22.) A jury confronted with that record could find that the property-limits justification was a cover for retaliation.

For both of these reasons, this portion of the motion should be denied.

### D.    Sanchez's Conduct Would Chill a Person of Ordinary Firmness

Sanchez argues that White cannot show chilling because he "has actively litigated this and another lawsuit." (ECF 97-1 at 9.) This argument is based on a misunderstanding of the law in the Ninth Circuit. The inquiry is *objective*, and White's *subjective* ability or inability to continue to exercise his First Amendment rights despite Sanchez's actions is not the question. The proper question is whether Sanchez's actions "would chill or silence a person of ordinary firmness from future First Amendment activities," not whether the plaintiff himself was silenced; a contrary rule would "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568–69).

A person of ordinary firmness would think twice about filing another grievance after an officer threatened to take everything he owned unless he dropped his complaints, and his legal files then disappeared though the prison's own regulations require that they be maintained or disposed of in particular ways with adequate documentation. *Rhodes*, 408 F.3d at 568 n.11 (a harm "that is more than minimal will almost always have a chilling effect").

### E.    Sanchez Is Not Entitled to Qualified Immunity

Finally, Sanchez argues that summary judgment should be granted because he is entitled to qualified immunity. (ECF 97-1 at 9–10.) He frames the question as whether inmates have a right "to be free from the destruction of their property when they possess excess property and do not request that such property be stored." (Id. at 10.) But this argument improperly assumes Sanchez's disputed version of the facts that he offered

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

storage option to White and White refused to answer. Qualified immunity cannot be granted based on the movant's version of genuinely disputed facts. *Tolan*, 572 U.S. at 656–57.

The question is whether an officer may threaten to destroy, and then destroy, a prisoner's legal files because the prisoner filed grievances against the officer's coworkers and threatened to sue the officer himself. The answer is no. And that right was clearly established long before April 2020. "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Pratt*, 65 F.3d at 806 (citing *Schroeder*, 55 F.3d at 461); *Shepard*, 840 F.3d at 693;  *Rhodes*, 408 F.3d at 563–68 (applying rule to property destruction); *Brodheim*, 872 F.3d at 1041–42 (applying rule to prisoners *threats* to sue); *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011), *overruled on other grounds, as recognized in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015) (prisoner's allegations were sufficient to state First Amendment retaliation claim where officials arbitrarily confiscated, withheld, and eventually destroyed his property because he exercised his First Amendment rights to file prison grievances and otherwise sought access to legal process).

For these reasons, qualified immunity should be denied.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Sanchez's Motion for Summary Judgment.

Dated: July 24, 2026                    LAW OFFICES OF DALE K. GALIPO


                                        /s/ Cooper Alison-Mayne
                                        Cooper Alison-Mayne
                                        *Attorney for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT