**LAW OFFICES OF DALE K. GALIPO**
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITE,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SANCHEZ,<br><br>                    Defendant. | Case No.: 2:21-cv-04066-GW-DFM<br><br>**DECLARATION OF PEDRO WHITE** |

1

## DECLARATION OF PEDRO WHITE

I, Pedro White, declare as follows:

1. I am the plaintiff in this action. I make this declaration in opposition to Defendant J. Sanchez's motion for summary judgment. The facts stated here are within my personal knowledge, and if called as a witness I could and would competently testify to them.

2. At all times relevant to this case, I was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). In April and May 2020 I was housed at the California Men's Colony ("CMC") in San Luis Obispo, Facility C. I am currently housed at the California Health Care Facility in Stockton, CDCR # AI5074.

3. Beginning on or about December 24, 2019, I filed a series of inmate grievances (CDCR 602s), citizen complaints, and other petitions complaining about misconduct by correctional officers at CMC Facility C, including Officers Reyes-Cortez, Urias, Monteiro, and Scott.

4. My complaints were not limited to internal grievances. I also wrote to and sought investigations by the San Luis Obispo County Grand Jury, the Office of the Inspector General, and the State Personnel Board.

5. Officers Reyes-Cortez, Urias, Monteiro, and Scott worked at CMC Facility C, where Sanchez also worked. I personally saw Sanchez and Officer Reyes-Cortez talking together on the yard on more than one occasion, and I saw Sanchez and Officer Monteiro together on the yard. These officers and Sanchez worked on the same facility and the same yard where I was housed.

6. The grievances, complaints, and lawsuits I had filed against these officers, the same officers Sanchez knew and worked with, were among the legal materials in the boxes Sanchez later took from me. Those boxes held the working files for my active cases, including the materials concerning these officers.

7.     On the morning of April 10, 2020, I was in the CMC dining hall when I saw Officer Scott and other officers use force against an inmate, who was seated. I believed the force was excessive and unlawful. I later reported what I had seen, including by sending a complaint to the Public Defender's Office in San Luis Obispo.

8.     During and immediately after that incident, I was not detained, handcuffed, asked for my identification, or otherwise reprimanded at the scene, and I was not removed from my housing unit until nearly four hours later, when I was told I was being placed in administrative segregation. Contrary to the defendant's assertion in their motion, I did not incite a riot.

9.     On April 10, 2020, while I was being processed for administrative segregation, Defendant Sanchez packed up the property from my cell. He recorded on the CDCR-1083 form seven boxes and three bags of property.

10.     Sanchez presented me with a form and told me to sign it. At first I refused because I had no way to confirm that the form was accurate: I could not see the property on the cart that Sanchez said contained all of my belongings, so I could not verify that the form correctly listed what I actually had.

11.     During this same conversation on April 10, 2020, Sanchez told me that I needed to drop the grievances and complaints I had been filing against the officers he knew and worked with. He also threatened that if I did not sign the form, I would lose all of my property.

12.     I told Sanchez that if he took or destroyed my property, I would file a grievance against him and sue him. Even so, out of fear that I would lose everything I owned if I refused, I ultimately signed the form under that threat and under protest.

13.     On May 8, 2020, Sanchez came to see me in administrative segregation. He told me he had "consolidated" my property, reducing my propety,

3

which include legal files from several active cases, to three boxes, and he gave me another CDCR-1083 form to sign.

14.    Sanchez never presented me with any options for handling my property, on this occasion or any other. He never told me that my property could be sent home, donated, stored, or otherwise preserved, and he never asked me how I wanted my property handled. I also never told Sanchez "fuck you." To the extent Defendant claims that he offered me disposal options and that I responded only "fuck you," that is not true.

15.    On the May 8, 2020 CDCR-1083, Sanchez did not check the box marked "Legal Materials" even though his April 10 inventory had checked that box.

16.    I refused to sign the May 8, 2020 1083 because it misrepresented my property.

17.    The six boxes plainly consisted of legal paperwork, and Sanchez treated them as legal paperwork when he filled out the April 10 inventory form checked the box for "Legal Materials." My understanding is that Sanchez was required to keep active-case legal materials in secure storage with weekly access, or, for any excess, to give me the opportunity to send the property home, donate it, or have it stored, and to record a proper disposition. Sanchez never did any of that for my six boxes of legal documents. I was never told my legal boxes had been placed in secure storage; they were never sealed and logged as stored legal materials; I was never given the weekly access to them that I understood the rules provide; and no lawful disposition was ever recorded.

18.    I was released from administrative segregation back to the general population on June 19, 2020. When I was released, my remaining property was reissued to me. My six boxes of legal documents were not among the property returned to me, and they have never been returned to me to this day.

19.    I did not personally watch anyone destroy my property, and I do not know the exact date or the precise manner in which it was destroyed. I know that

4

LAW OFFICES OF
DALE K. GALIPO
CIVIL RIGHTS ATTORNEYS

Sanchez was the officer who took my property, inventoried it, consolidated it from seven boxes to three, and was the last person documented to have custody of it; that he never recorded a lawful disposition for the six legal boxes; and that when I came out of administrative segregation the six boxes were gone. And I know he threatened to destroy my files if I continued to file complaints against him and his collogues.

20.     After I learned my property had been destroyed, I filed a written complaint against Defendant Sanchez, and I filed and exhausted grievances about his conduct.

21.     The destruction of my six boxes of legal documents harmed my active cases. In one case, *White v. Castillo*, I did not lose the case outright, but because my legal paperwork was missing, I missed a filing deadline and my position in the case was weakened. In another case, *White v. Mark N. Pazin and Merced County*, I lost the case because my legal papers had been destroyed and without it, I was unable to prepare and file an opposition to a motion for summary judgment.

22.     The destruction of my legal materials, together with Sanchez's threat that I would lose all of my property, caused me significant distress and made it far harder for me to pursue my grievances and lawsuits. It set my cases back and forced me to try to reconstruct records I had already assembled.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on  7- 13 - 26  , in Stockton, California.

Pedro White