**LAW OFFICES OF DALE K. GALIPO**
Cooper Mayne, SBN 343169
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Email: cmayne@galipolaw.com

*Attorney for Plaintiff Pedro White, Sr.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PEDRO WHITE, SR.,<br>Plaintiff,<br>v.<br>J. SANCHEZ,<br>Defendant. | Case No.: 2:21-cv-04066-GW-DFM<br>**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE (DKT. 105)**<br>Judge: George H. Wu<br>Mag. Judge: Douglas F. McCormick<br>Complaint Filed: May 14, 2021<br>Trial Date: None set |

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ 3

I. INTRODUCTION ........ 6

II. BACKGROUND ........ 6

A. White's Grievances and the April 10, 2020 Inventory ........ 6

B. The May 8, 2020 Consolidation and the Loss of the Legal Boxes ........ 7

C. Procedural History ........ 9

III. LEGAL STANDARD ........ 10

IV. ARGUMENT ........ 10

A. Judge McCormick Erred by Disregarding Paragraph 11 of White's Declaration ........ 10

1. Judge McCormick Applied the Rule Sua Sponte, Without Notice ........ 11

2. The Record Shows No Clear and Unambiguous Inconsistency ........ 12

B. The Record Presents a Genuine Dispute on Each Element of White's Retaliation Claim ........ 16

1. Adverse Action: Sanchez Threatened White's Property and Then Caused the Loss of the Legal Boxes ........ 16

2. Causation: White's Protected Conduct Motivated Sanchez ........ 19

3. Legitimate Correctional Goal: Neither the Threat Nor the Loss Served One ........ 21

4. Chilling: Sanchez's Conduct Would Chill a Person of Ordinary Firmness ........ 23

C. Sanchez Is Not Entitled to Qualified Immunity ........ 23

V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agricola Baja Best, S. de R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974 (S.D. Cal. 2014) .......... 13
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 10
*Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018) .......... 10
*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) .......... 16, 19, 23, 24
*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) .......... 19, 22
*Clark v. Mason*, No. C04-1647-JCC, 2007 WL 2572344 (W.D. Wash. Sept. 6, 2007) .......... 17
*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) .......... 20
*EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005 (D. Ariz. 2013) .......... 14
*Entler v. Gregoire*, 872 F.3d 1031 (9th Cir. 2017) .......... 16, 24
*Ghaderi v. Amazon.com Servs. LLC*, 2025 WL 3050210 (C.D. Cal. July 14, 2025) .......... 15
*Greene v. Solano Cnty. Jail*, 513 F.3d 982 (9th Cir. 2008) .......... 12
*Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997) .......... 19
*Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018) .......... 11
*Johnson v. Ryan*, 55 F.4th 1167 (9th Cir. 2022) .......... 22
*Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053 (9th Cir. 2023) .......... 11
*Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015) .......... 16, 24
*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) .......... 12
*Kyles v. Baker*, 72 F. Supp. 3d 1021 (N.D. Cal. 2014) .......... 14
*Leslie v. Grupo ICA*, 198 F.3d 1152 (9th Cir. 1999) .......... 14
*Long v. Alameda Unified School District*, No. 16-cv-06279-JST, 2018 WL 2317890 (N.D. Cal. May 22, 2018), *aff'd*, 764 F. App'x 585 (9th Cir. 2019) .......... 9, 12, 14, 15
*McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870 (9th Cir. 2011) .......... 19

*Nightingale v. Parnell*, No. 6:20-cv-00406-CL, 2023 WL 6622030 (D. Or. Oct. 5, 2023) ........ 17
*Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) (en banc) ........ 11
*Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995) ........ 20, 24
*Quiroz v. Horel*, 85 F. Supp. 3d 1115 (N.D. Cal. 2015) ........ 21
*Randolph v. Hall*, No. 1:20-cv-01434-JLT-SKO (PC), 2024 WL 3540417 (E.D. Cal. July 25, 2024), *report and recommendation adopted*, 2024 WL 4053265 (E.D. Cal. Sept. 5, 2024) ........ 10, 18
*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005) ........ 16, 23, 24
*Shepard v. Quillen*, 840 F.3d 686 (9th Cir. 2016) ........ 22, 24
*Silva v. Di Vittorio*, 658 F.3d 1090 (9th Cir. 2011), *overruled on other grounds as recognized in Richey v. Dahne*, 807 F.3d 1202 (9th Cir. 2015) ........ 24
*Tolan v. Cotton*, 572 U.S. 650 (2014) (per curiam) ........ 10, 18, 21, 24
*Van Asdale v. International Game Technology*, 577 F.3d 989 (9th Cir. 2009) ........ 6, 12, 13
*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012) ........ 9, 12, 14

**Statutes**

28 U.S.C. § 636(b)(1) ........ 10, 16

**Rules**

Fed. R. Civ. P. 56(e)(2) ........ 16
Fed. R. Civ. P. 56(f) ........ 6, 11
Fed. R. Civ. P. 72(b)(3) ........ 10

**Regulations**

Cal. Code Regs. tit. 15, § 3191(c) ........ 17

**Other Authorities**

CDCR Department Operations Manual §§ 54030.6, 54030.10.2, 54030.13.2 .................. 17

# I. INTRODUCTION

Plaintiff Pedro White, Sr. objects to the Report and Recommendation that the Court grant Defendant J. Sanchez's motion for summary judgment on White's First Amendment retaliation claim. (Dkt. 105 ("Recommendation").) White, who was then a prisoner at the California Men's Colony, alleges that Sanchez, a correctional officer there, threatened White's property to make him drop his grievances against Sanchez's coworkers, and then, after White threatened to sue him, caused the loss of six boxes of White's legal papers. Acting sua sponte and without giving White a chance to respond, Magistrate Judge Douglas F. McCormick disregarded a key paragraph of White's declaration under the sham-affidavit rule and then concluded that no reasonable jury could find for White. (Recommendation at 8-17.)

The Court should decline to adopt the Recommendation. First, Judge McCormick applied the sham-affidavit rule without notice and without identifying any clear and unambiguous contradiction. *See* Fed. R. Civ. P. 56(f); *Van Asdale v. International Game Technology*, 577 F.3d 989, 998-99 (9th Cir. 2009). Second, on the full record, each element of White's claim presents a triable issue, as explained in Part IV.B, below. The Court should therefore deny the motion.

# II. BACKGROUND

## A. White's Grievances and the April 10, 2020 Inventory

Beginning on or about December 24, 2019, White filed a series of inmate grievances (CDCR 602s), citizen complaints, and other petitions complaining of misconduct by correctional officers at CMC Facility C, including Officers Reyes-Cortez, Urias, Monteiro, and Scott. (Plaintiff's Statement of Additional Material Facts, Dkt. 102-2 ("PAMF") 1.) He also sought investigations by the San Luis Obispo County Grand Jury, the Office of the Inspector General, and the State Personnel Board. (PAMF 2.) Officers Reyes-Cortez, Urias, Monteiro, and Scott worked at CMC Facility C with Sanchez. (PAMF 3.) White saw Sanchez talking with Reyes-Cortez on the yard more than once. (PAMF 4; *see also* PAMF 5-6.)

On the morning of April 10, 2020, White witnessed Officer Scott and other officers use force on a seated inmate in the CMC dining hall. Believing the force excessive, he reported it, including by complaint to the San Luis Obispo Public Defender's Office. (PAMF 7; Declaration of Pedro White, Dkt. 102-4 ("White Decl.") ¶ 7.) Nearly four hours later, he was taken to administrative segregation.[1] (PAMF 8.) Sanchez has declared that April 10 was the first day he worked with Officer Scott and that Scott "was injured that morning during an incident at CMC." (PAMF 5; Declaration of J. Sanchez in Support of Motion for Summary Judgment, Dkt. 97-5 ("Sanchez Decl.") ¶ 6.)

During White's processing into administrative segregation, Sanchez packed White's cell property and recorded seven boxes and three bags on a CDCR 1083 inventory form, checking the "Legal Material" box. (PAMF 10-11; Declaration of I. Vazirani in Support of Defendant's Motion for Summary Judgment, Dkt. 97-4 ("Vazirani Decl.") at 36.) The boxes held the working files for White's active cases, including the grievances and complaints against Sanchez's coworkers. (PAMF 12.)

White initially refused to sign the form because he could not see the property on the cart and could not verify the form's accuracy. (PAMF 13.) Sanchez told White he needed to drop the grievances and complaints against the officers Sanchez knew and worked with, and threatened that if White did not sign, he would lose all of his property. (PAMF 14-15.) White responded that if Sanchez destroyed the property, he would file a grievance against him and sue him. (PAMF 16; *see* Fourth Amended Complaint, Dkt. 80 ("Fourth Am. Compl.") ¶¶ 38-40.) Fearing the loss of everything he owned, White signed the form despite his reservations. (PAMF 17.)

### B. The May 8, 2020 Consolidation and the Loss of the Legal Boxes

On May 8, 2020, Sanchez told White he had "consolidated" the property down to three boxes, and presented a second CDCR 1083. (PAMF 18.) None of the three boxes

[1] Sanchez's motion asserted that White "incited a riot" that day. (Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, Dkt. 97-1 ("Mot.") at 1.) No cited evidence supports that assertion, and White denies it under oath. (PAMF 8-9.)

contained White's legal files. (White Decl. ¶ 13; Vazirani Decl. at 34, 37.) Sanchez never offered any options for the disposition of the legal documents or other property. He never said it could be sent home, donated, or stored, and never asked how White wanted it handled. (PAMF 19.)

The May 8 paperwork shows what became of the legal files. The new CDCR 1083 omitted the "Legal Material" designation that the April 10 form carried and noted "Property inventory on 4-10-20 consolidated 5-8-20." (PAMF 21; Vazirani Decl. at 37.) The accompanying Property Search Receipt/Notice, on which Sanchez listed himself as the inspecting officer, lists "6 Boxes of legal paperwork" separately from the three boxes that went back to White. (PAMF 22; Vazirani Decl. at 33-34.) For every other excess item on the receipt, Sanchez marked a disposition of "A," which the form defines as "Disposed of per Title 15, §3191(c)." For the six boxes of legal paperwork, the disposition column is blank. (*Id.*; *see* Recommendation at 5.)

Sanchez claims the legal paperwork may have been disposed of because White failed to make a disposition election. But even when a prisoner makes no disposition election, staff "shall document that fact and determine the method of disposition." Cal. Code Regs. tit. 15, § 3191(c) (Declaration of Cooper Alison-Mayne, Dkt. 102-3 ("Alison-Mayne Decl.") Ex. A). Excess active-case legal material must be stored, logged, and sealed, and property held for a prisoner in administrative segregation generally must be returned to him on release. CDCR Department Operations Manual ("DOM") §§ 54030.6, 54030.10.2, 54030.13.2(a)(4) (Vazirani Decl. at 23, 27-28, 30). None of that happened. (PAMF 24.) When White was released to the general population on June 19, 2020, his remaining property was reissued but not the six boxes of legal materials, and they have never been returned. (PAMF 25.) Sanchez was the last person documented to have custody of the boxes, and May 8 is the last day any record accounts for them. (PAMF 26.) Sanchez denies destroying the boxes, but he declares only that White's "property was securely stored in CMC Facility C" and that he is "not aware of what ultimately happened to Mr. White's property." (Mot. at 5-6; Sanchez Decl. ¶¶ 3, 5.)

### C. Procedural History

White represented himself for the first five years of this case. During that time he filed a verified Fourth Amended Complaint and sat for his deposition. (Fourth Am. Compl. at 9; Vazirani Decl. at 6.) Sanchez moved for summary judgment on May 29, 2026, arguing that White could not show adverse action, causation, or chilling, that Sanchez's conduct served a legitimate correctional goal, and that Sanchez was entitled to qualified immunity. (Mot. at 5-10.)

Counsel appeared for White on June 2, 2026. (Notice of Appearance, Dkt. 98.) White opposed the motion on every element and on qualified immunity, relying on Sanchez's demand that White drop his grievances against Sanchez's coworkers (White Decl. ¶ 11), Sanchez's own forms, the missing disposition for the legal boxes, and the timing of their loss. (Plaintiff's Memorandum of Opposition to Defendant Sanchez's Motion for Summary Judgment, Dkt. 102 ("Opp.") at 5-10.)

In reply, Sanchez argued that the evidence of destruction was speculative and that White caused the loss by failing to choose a disposition. (Defendant's Reply in Support of Motion for Summary Judgment, Dkt. 103 ("Reply") at 2-4.) Both arguments rest on Sanchez's version of disputed facts: White denies under oath that Sanchez ever offered him a choice of disposition, and Sanchez's own forms record no disposition for the legal boxes. (PAMF 19-22.) Sanchez did not argue that White's declaration contradicted his deposition, did not invoke the sham-affidavit rule, and did not object to the declaration. (*See* Reply; Defendant's Response to Plaintiff's Statement of Genuine Disputes, Dkt. 103-1 ("SGD Response").)

On October 2, 2026, Judge McCormick recommended that the Court grant the motion. (Recommendation at 18.) He first disregarded paragraph 11 of White's declaration under the sham-affidavit rule, a ground Sanchez never raised, relying on *Yeager* and *Long*, neither of which Sanchez cited. (*Id.* at 8-12.) He then concluded that no evidence connected Sanchez to the loss of the boxes, reading the property receipt to show that the boxes were "impounded" and accepting that the property was stored (*id.* at 13-15);

that the timing of the loss was insufficient to create a genuine dispute on retaliatory causation (*id.* at 15-16); that White's threat to grieve and sue could not have caused Sanchez's earlier threat to take White's property (*id.* at 16); and that Sanchez's threat that White would lose his property served a legitimate correctional goal (*id.* at 16-17). For the storage and legitimate-goal findings, he relied on *Randolph v. Hall*, No. 1:20-cv-01434-JLT-SKO (PC), 2024 WL 3540417 (E.D. Cal. July 25, 2024), *report and recommendation adopted*, 2024 WL 4053265 (E.D. Cal. Sept. 5, 2024), which neither party cited. (Recommendation at 14, 17.) He did not reach whether Sanchez's conduct would chill a person of ordinary firmness from exercising First Amendment rights, or whether Sanchez is entitled to qualified immunity. (*See id.* at 13-17; *id.* at 17 n.7.)

On October 19, 2026, White filed this timely objection to the Recommendation. (*See* Dkt. 104.)

## III. LEGAL STANDARD

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3).

On summary judgment, a court may not "weigh the evidence and determine the truth of the matter" and must draw reasonable inferences in favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)); *Bonivert v. City of Clarkston*, 883 F.3d 865, 880 (9th Cir. 2018).

## IV. ARGUMENT

### A. Judge McCormick Erred by Disregarding Paragraph 11 of White's Declaration

White declared that, during the April 10 inventory, Sanchez "told me that I needed to drop the grievances and complaints I had been filing against the officers he knew and worked with." (White Decl. ¶ 11.) It is direct evidence that Sanchez knew about White's

grievances against his coworkers and that those grievances motivated his threat and his handling of White's property. (Opp. at 6-7.) Judge McCormick disregarded that statement under the sham-affidavit rule. (Recommendation at 8-12.) That ruling was wrong for two independent reasons. First, Judge McCormick raised the issue sua sponte and decided it without giving White notice or an opportunity to respond. Second, nothing in the record shows the clear and unambiguous inconsistency between the declaration and White's deposition testimony that the sham-affidavit rule requires.

1. Judge McCormick Applied the Rule Sua Sponte, Without Notice

Sanchez never argued that White's declaration was a sham, contradicted his deposition, or should be disregarded (*see* Reply; SGD Response); in fact, Sanchez did not respond to White's statement of additional material facts at all (*see* Reply at 6; SGD Response). Judge McCormick nonetheless raised the issue himself, resolved it against White, and faulted him because he "offers no explanation" for omissions that neither Sanchez nor Judge McCormick ever asked him to explain. (Recommendation at 12.)

The Ninth Circuit requires notice before a court rules against a party on a ground the opposing party never raised. "Before ordering summary judgment in a case, a district court must not only provide the parties with notice and an opportunity to respond to adverse arguments, it must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc). More generally, "a district court generally must provide the parties with adequate notice that it is contemplating invoking a particular procedural device sua sponte." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1060 (9th Cir. 2023). Rule 56 itself permits a court to "grant the motion on grounds not raised by a party" only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). The Ninth Circuit has vacated a grant of summary judgment, entered on a magistrate judge's recommendation, on a pro se prisoner's claim that the defendants' motion never addressed, because such litigants "cannot be expected to anticipate and prospectively oppose arguments that an opposing defendant does not make." *Hoard v. Hartman*, 904 F.3d 780, 792-93 (9th Cir. 2018)

(quoting *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008)); *see also Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) (remanding for the district court to determine, "after a hearing on the issue," whether the testimony was a sham).

Even the court in *Long v. Alameda Unified School District*, the case on which the Recommendation chiefly relies, asked the plaintiff's attorney for an explanation before disregarding her testimony. No. 16-cv-06279-JST, 2018 WL 2317890, at *6 (N.D. Cal. May 22, 2018), *aff'd*, 764 F. App'x 585 (9th Cir. 2019). White received no such opportunity. Had he been asked, his explanation would have been simple, and it is apparent from the record: in the deposition excerpts Sanchez submitted, no one asked White what Sanchez said to him on April 10. A ruling that disregards sworn testimony on a ground the moving party chose not to raise, without hearing from the party whose testimony is disregarded, is the kind of "[a]ggressive invocation of the rule" that *Van Asdale* cautions against. 577 F.3d at 998.

2. <u>The Record Shows No Clear and Unambiguous Inconsistency</u>

Because the sham-affidavit rule "is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence," it "should be applied with caution." *Van Asdale*, 577 F.3d at 998 (internal quotation marks and citation omitted). The inconsistency between a deposition and a later declaration "must be clear and unambiguous to justify striking the affidavit," and "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition." *Id.* at 998-99 (internal quotation marks and citations omitted). Likewise, "new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012).

Nothing Judge McCormick relied on contradicts paragraph 11 of White's declaration, so the sham-affidavit rule should not have been applied. Judge McCormick relied on four things: (1) White's answer when asked why Sanchez retaliated against him

(Recommendation at 10); (2) White's answers to two open-ended catch-all questions (*id.*); (3) White's testimony about Sanchez's relationships with the officers against whom White had filed grievances (*id.* at 10-11); and (4) White's pro se pleading history, including his Fourth Amended Complaint (*id.* at 11-12). Each is addressed in turn.

First, defense counsel asked White, "Why would the defendant retaliate against you?" White answered: "Since he had nepotism and I think they all work together. Because I filed the first 602 against the officer and from then on, I was starting to get retaliated against." (Vazirani Decl. at 9 (Deposition of Pedro White ("White Dep.") 30:15-18).) Nothing in that answer is inconsistent with paragraph 11. White identified one basis for Sanchez's retaliation; paragraph 11 identifies an additional one, and both point to the same motive. At most, the deposition answer was incomplete, and an incomplete answer is not a contradiction. A deponent who gives one reason has not sworn that no other reason exists. *See Van Asdale*, 577 F.3d at 999. And Sanchez's statement is not a different reason at all; it is the factual basis for the reason White gave.

Second, White did not volunteer Sanchez's statement in response to two open-ended catch-all questions. Defense counsel asked whether there was "anything else that's relevant to this case that I haven't asked you about that you want to talk about," and White answered, "No, ma'am." (Vazirani Decl. at 20 (White Dep. 46:12-16).) Counsel then asked whether there was "any information that you want to add to any of your answers to my questions today." White answered: "No. Not other than he was supposed to give me an opportunity to send my property home or put it in R&R. He didn't give me that opportunity." (*Id.* (White Dep. 46:17-21).) Failing to volunteer a detail in response to open-ended questions makes a deposition incomplete, not clearly and unambiguously inconsistent with a later declaration. *See Agricola Baja Best, S. de R.L. de C.V. v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 985 (S.D. Cal. 2014) ("There is no inconsistency between [the] declaration and his prior testimony because he did not offer any previous testimony on the subject."). In *Van Asdale*, opposing counsel's line of questioning, including a general question whether the deponent recalled any "other statements," left

him with "only cursory testimony" on the subject, and the Ninth Circuit held that his later, more detailed declaration was a legitimate attempt to clarify that testimony, not a sham. 577 F.3d at 999. The same is true here.

Third, White's testimony about Sanchez's relationships with the other officers concerned what White knew about those relationships, not what Sanchez said to him, so it cannot contradict paragraph 11. (Vazirani Decl. at 10-17 (White Dep. 33:25-40:11).) The Recommendation also understates White's testimony, describing him as having "no such knowledge other than that Sanchez worked with them." (Recommendation at 10.) In fact, White testified that he had "seen them talk before," referring to Sanchez and Officer Reyes-Cortez, and answered "Oh, yes. Yes, ma'am" when asked whether Sanchez knew Officer Monteiro. (Vazirani Decl. at 12, 14 (White Dep. 35:16-17, 37:18-20).)

Fourth, White's pro se pleadings are consistent with the declaration. The verified Fourth Amended Complaint describes the same April 10 encounter, including Sanchez's threat and White's response. (Fourth Am. Compl. ¶¶ 38-40.) It also frames the entire case as retaliation tied to White's grievances against Sanchez's coworkers. (*Id.* ¶ 1.) One statement left out of a summary of events like this is a simple omission, and courts decline to treat such omissions as shams. *See EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1019 (D. Ariz. 2013) (omissions "do not rise to the extreme level of forgetfulness exhibited by the declarant in" *Yeager*). And apart from the verified Fourth Amended Complaint, White's earlier filings that the Recommendation cites were unsworn briefs, which cannot support the sham-affidavit rule at all. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999); *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1032 (N.D. Cal. 2014).

The authorities Judge McCormick relied on do not support his ruling. *Yeager* involved a deponent who answered approximately 185 questions by saying he did not recall, including questions about significant, difficult-to-forget events, and then supplied detailed answers in his declaration. 693 F.3d at 1080-81. *Long* is even further from this case. (Recommendation at 9-10.) There, the plaintiff "was asked three separate times during her deposition" whether she had any reason to believe her supervisor fired her

because of her race. She never mentioned the anonymous phone call in which, she later claimed, the supervisor used a racial epithet; she raised it for the first time when she opposed summary judgment. *Long*, 2018 WL 2317890, at *5. The court treated the omission as a contradiction only "[g]iven the extreme nature of the epithet," and only after it "asked Long's attorney whether Long had any explanation for this contradiction, and he offered none." *Id.* at *6. Moreover, the Ninth Circuit's unpublished memorandum reviewed that ruling only for abuse of discretion. 764 F. App'x at 586. The affirmance means only that the ruling fell within the district court's discretion on that record, not that an omission from deposition testimony is a contradiction. Another court in this District has distinguished *Long* because the omitted statement there was extreme, concluding that a plaintiff's added statements were not so "extreme [in] nature" as to contradict her deposition and instead were "simply clarifying" it. *Ghaderi v. Amazon.com Servs. LLC*, 2025 WL 3050210, at *7 (C.D. Cal. July 14, 2025). This case differs on every point that mattered in *Long*. In the excerpts Sanchez submitted, White was asked once, not three times, why Sanchez retaliated against him, and the question called for his belief about Sanchez's motive, not for what Sanchez said. Sanchez's statement was not an isolated, inflammatory remark of the kind a witness could not forget to mention; it was the factual basis for the very belief White gave.

The Court should therefore consider paragraph 11. With it, White has direct evidence of retaliatory motive: Sanchez demanded that White abandon his grievances against Sanchez's coworkers while threatening to destroy the records and documents supporting those grievances. (White Decl. ¶ 11; *see* Opp. at 6-7.) That evidence alone creates a genuine dispute on causation. And because Judge McCormick's causation and legitimate-purpose holdings both depend on excluding paragraph 11, they fall with it. (*See* Parts IV.B.2-3.)

**B. The Record Presents a Genuine Dispute on Each Element of White's Retaliation Claim**

A prisoner's First Amendment retaliation claim has five elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Sanchez did not argue that White's grievances against Sanchez's coworkers were unprotected, and White's threat to grieve and sue Sanchez was protected as well. *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("threats to sue fall within the purview of the constitutionally protected right to file grievances"); *Jones v. Williams*, 791 F.3d 1023, 1035-36 (9th Cir. 2015). The parties fully briefed each of the remaining elements, including the two Judge McCormick did not reach. (Mot. at 5-10; Opp. at 5-10; Reply at 2-4.) On de novo review, the record presents a genuine dispute on all four, and the Court can deny the motion. *See* 28 U.S.C. § 636(b)(1).

1. <u>Adverse Action: Sanchez Threatened White's Property and Then Caused the Loss of the Legal Boxes</u>

The record shows two adverse actions. First, Sanchez's April 10 threat was itself an adverse action. "[T]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). White declared that Sanchez threatened that he would lose all of his property, including the legal files that held his grievances. (White Decl. ¶ 11; PAMF 12, 15.) Sanchez's declaration does not address what he said to White on April 10, and Sanchez did not respond to White's statement of additional facts. (*See* Sanchez Decl. ¶¶ 2-3; SGD Response.) The Court may therefore consider White's account of the threat undisputed. Fed. R. Civ. P. 56(e)(2). The threat is an adverse action whatever later happened to the boxes. Whether Sanchez made it for a retaliatory reason is a question of causation and legitimate purpose, addressed below.

Second, the loss of White's legal materials was an adverse action, and a reasonable jury could find that Sanchez caused it. Sanchez's own forms trace the boxes to him. On April 10, he inventoried seven boxes and three bags and checked "Legal Material." (Vazirani Decl. at 36.) On May 8, he prepared a new inventory listing three boxes, with "Legal Material" unchecked and the notation "Property inventory on 4-10-20 consolidated 5-8-20." (*Id.* at 37.) The same day, Sanchez prepared a property receipt, listing himself as the inspecting officer, that lists "6 Boxes of legal paperwork" separately from the three boxes returned to White. (Id. at 33-34.) For every other excess item, the receipt records a disposition of "A" ("Disposed of per Title 15, §3191(c)"); for the six boxes of legal paperwork, the disposition column is blank. (*Id.* at 34.) No later document mentions the boxes, and White never saw them again. (White Decl. ¶¶ 17-19; PAMF 25-26.) On this record, a jury could find that the legal files disappeared on May 8, when Sanchez "consolidated" the property, separated out the six boxes, and recorded no disposition for them.

Sanchez contends that if the property was destroyed, it was because White failed to choose what to do with it. (Mot. at 7.) But if that were so, the record would show it. When a prisoner makes no disposition election, staff "shall document that fact and determine the method of disposition." Cal. Code Regs. tit. 15, § 3191(c). Excess active-case legal material must be stored, logged, and sealed, and property held for a prisoner in administrative segregation generally must be returned to him on release. DOM §§ 54030.6, 54030.10.2, 54030.13.2(a)(4). No record documents a refusal by White, a storage location for the six boxes, or their disposition. The officer who last handled the boxes left that gap in paperwork he prepared himself, and a jury could infer from it that the loss was not an accident of the property process. Sanchez also had a motive, and he announced it: he demanded that White drop his grievances, threatened the files that contained them, and heard White say he would sue if the files were destroyed. That evidence of motive and intent is further circumstantial evidence that Sanchez caused the loss. It is set out in Part IV.B.2, below.

Judge McCormick nonetheless found that "the record supports Sanchez's account that the documents were placed into institutional storage." (Recommendation at 13.) That finding rests on a misreading of the record. First, Judge McCormick read the receipt to show that the six boxes "were impounded." (Recommendation at 13.) But "Item(s) Impounded" is the printed heading of the receipt's item column. Every item on the form appears under it, including the items Sanchez marked "A," meaning "Disposed of per Title 15, §3191(c)." The heading says nothing about what became of any item; the disposition column does, and for the six legal boxes it is blank. (Vazirani Decl. at 33-34.) Second, he stated that White "acknowledges" that Sanchez told him "the six boxes had been consolidated into three boxes." (Recommendation at 13-14.) White said only that Sanchez told him he had "consolidated" his property, "reducing my prop[er]ty, which include[d] legal files from several active cases, to three boxes." (White Decl. ¶ 13.) He did not say the legal files went into the three boxes, and the paperwork shows they did not: the May 8 inventory lists the three boxes that went with White, none of which held legal files, and the receipt lists the six legal boxes separately. (Vazirani Decl. at 34, 37.) Third, he wrote that Sanchez "declares that he placed them . . . into institutional storage." (Recommendation at 14-15.) Sanchez declared only that, after the April 10 inventory, White's "property was securely stored in CMC Facility C," without saying who stored it, where in Facility C, or whether that statement covers the legal boxes he separated from the rest of the property on May 8. (Sanchez Decl. ¶¶ 3-5.) Supplying the missing facts and inferences in favor of the moving party is the opposite of what Rule 56 requires. *Tolan*, 572 U.S. at 657.

*Randolph*, on which Judge McCormick relied (Recommendation at 14, 17), does not support a different result. There, the plaintiff conceded he had "no documentary evidence" that procedures were not followed, the form did not designate legal material, and there was no evidence, other than his own declaration, that the defendants knew of his protected conduct. *Randolph, 2024 WL 3540417,* at *12-14. Here, Sanchez's own forms designate the legal material so their disappearance at the time White's property was

"consolidated," while showing no disposition marked for the legal boxes, in violation of the facilities own rules and regulations.

The first element is satisfied.

2. Causation: White's Protected Conduct Motivated Sanchez

To survive summary judgment on causation, White need only "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent." *Brodheim*, 584 F.3d at 1271 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). That evidence may be "direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence": timing, expressed opposition to the protected conduct, or evidence that the defendant's reasons were "false and pretextual." *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (internal quotation marks and citation omitted). White has direct evidence and all three kinds of circumstantial evidence.

First, paragraph 11 is direct evidence of motive and of knowledge. Sanchez told White he needed to drop the grievances and complaints he had filed against the officers Sanchez knew and worked with, in the same conversation in which he threatened the property that contained them. (White Decl. ¶ 11; PAMF 14-15.) Other evidence confirms that Sanchez worked with those officers and that White saw him talking with Reyes-Cortez on the yard. (PAMF 3-5; Vazirani Decl. at 12 (White Dep. 35:16-23).) Judge McCormick's observation that White offered no evidence of a "personal relationship" between Sanchez and those officers (Recommendation at 12 n.5) misses the point. Paragraph 11 is Sanchez's own statement that he knew and worked with them, and a jury may infer that an officer would retaliate on behalf of the coworkers he named.

Second, White's threat to grieve and sue gave Sanchez a further motive. White told Sanchez on April 10 that if he took or destroyed the property, White would file a grievance against him and sue him. (White Decl. ¶ 12; PAMF 16.) That statement further establishes Sanchez's knowledge of White's protected conduct. *See Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997) (prisoner's statement that he was "going to grievance" the

officer "amply supports the inference that [the officer] knew, at least to some extent, of [the prisoner's] use of the grievance system"). On May 8, Sanchez prepared a new inventory that dropped the legal designation, and the receipt from that day recorded no disposition for the boxes. (Vazirani Decl. at 33-34, 37.) "[T]iming can properly be considered as circumstantial evidence of retaliatory intent," *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995), and four weeks is well within the range that supports the inference, *see Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."). Judge McCormick measured from the wrong events. He compared Sanchez's April 10 threat with White's June 19 release, more than two months later, and faulted White for not knowing when the boxes disappeared. (Recommendation at 15.) The relevant interval runs from White's threat to Sanchez's own handling of the boxes on May 8. That is the last day any record accounts for the boxes, and the day Sanchez "consolidated" the property, dropped the legal designation, separated out the six boxes, and recorded no disposition for them. See Part IV.B.1. A jury could find that the loss occurred that day.

Third, White's complaint about the use of force by Officer Scott and other officers that morning supplies another motive. White witnessed the force in the dining hall and later reported it. After the incident, he was taken to administrative segregation, and Sanchez packed his property. (PAMF 7-8, 10; White Decl. ¶¶ 7-9.) Sanchez declared that April 10 was the first day he worked with Scott and that he recalled Scott "was injured that morning during an incident at CMC." (Sanchez Decl. ¶ 6; *see* PAMF 5.)[2] A jury could infer that an officer working alongside Scott that day knew of White's role in the incident

---

[2] Sanchez's declaration says he first worked with Officer Scott on "April 10, 2026," the morning Scott "was injured . . . during an incident at CMC." (Sanchez Decl. ¶ 6.) The year is an evident typo for 2020: the incident, and Sanchez's packing of White's property, both happened on April 10, 2020. White pointed out the error, and Sanchez did not respond. (PAMF 5.) Judge McCormick nonetheless read the declaration literally, concluding that Sanchez "did not work with another until approximately six years after he collected Plaintiff's property." (Recommendation at 12 n.5.) Resolving an obvious typo against the nonmoving party is not permitted. See Tolan, 572 U.S. at 656-57.

and that the timing was not a coincidence. White raised this argument, and Sanchez responded to it (Opp. at 7; Reply at 3), but the Recommendation does not address it.

Finally, Sanchez's explanation for the loss is disputed and shifting, which is itself evidence of pretext. Sanchez contends that he offered White the options of disposal, sending the property home, or storage, that White answered "fuck you," and that any loss followed from White's failure to choose. (Mot. at 7; Sanchez Decl. ¶ 4.) White denies all of this under oath, as Judge McCormick acknowledged. (PAMF 19-20; Recommendation at 6.) A jury, not the Court, must resolve that dispute. *Tolan*, 572 U.S. at 656-57. Sanchez's explanation has also shifted. His declaration says the property "was securely stored" (Sanchez Decl. ¶ 3), while his briefs argue that, to the extent the property was destroyed, that was "because of Plaintiff's failure to express that he wished his property to be stored" (Mot. at 7; *see* Reply at 3). *See Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1146 (N.D. Cal. 2015) (where officials gave "different reasons" for confiscating the plaintiff's paperwork, "a reasonable inference can be made that the reasons are false or pretextual").

On this record, a reasonable jury could find that White's protected conduct was a substantial or motivating factor behind both Sanchez's threat and the loss of the legal boxes.

3. <u>Legitimate Correctional Goal: Neither the Threat Nor the Loss Served One</u>

Judge McCormick concluded that Sanchez's threat served the legitimate goal of requiring White to sign an inventory form. (Recommendation at 16-17.) That conclusion has two flaws.

First, it depends on excluding paragraph 11. With paragraph 11, the threat was not a neutral warning about a form; it came with a demand that White abandon his grievances against Sanchez's coworkers. No legitimate correctional goal is served by demanding that a prisoner drop his grievances, and an officer cannot justify that demand by pointing to the neutral task he was performing when he made it. Prison officials "may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a

neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289.

Second, Judge McCormick did not ask whether the loss of the legal boxes served any legitimate goal. It did not. Sanchez contends that his conduct served the goal of enforcing CDCR's property rules. (Mot. at 8.) But those rules required the institution to store White's excess active-case legal material or document its disposition. *See* Part IV.B.1. Conduct that violated the rules defining lawful enforcement of the property limits cannot have served the goal of enforcing them. And a jury could find that Sanchez used the property process "as a cover or a ruse" to punish White. *Bruce*, 351 F.3d at 1289; *see Johnson v. Ryan*, 55 F.4th 1167, 1202 (9th Cir. 2022) (if officers "used procedures outlined in [prison] policies . . . in order to punish [the prisoner] for his lawsuits, their use of these procedures was pretextual and not a reasonable advancement of the legitimate penological goal"); *Shepard v. Quillen*, 840 F.3d 686, 690-91 (9th Cir. 2016) (reversing summary judgment where inconsistencies in the paperwork supporting an officer's justification could show such a cover). Other courts have drawn the same inference from an officer's failure to follow the property rules he invokes. *See Nightingale v. Parnell*, No. 6:20-cv-00406-CL, 2023 WL 6622030, at *5 (D. Or. Oct. 5, 2023) (where, among other things, the officer "did not document the confiscated property," "the totality of the circumstances raises a genuine issue of fact regarding the motivation behind" his conduct); *Clark v. Mason*, No. C04-1647-JCC, 2007 WL 2572344, at *5 (W.D. Wash. Sept. 6, 2007) (violations of prison policy "permit a rational inference that [officers] were acting in retaliation rather than pursuant to any legitimate penological objective"). Sanchez's paperwork bears the same hallmarks: a "Legal Material" designation checked on April 10 and gone on May 8, and a disposition recorded for every excess item but the six boxes of legal files. (PAMF 11, 21-22.)

Whether Sanchez acted for a legitimate correctional purpose is therefore a question for the jury.

4. Chilling: Sanchez's Conduct Would Chill a Person of Ordinary Firmness

Judge McCormick did not reach this element. (*See* Recommendation at 13-17.) Apart from asserting that White has no evidence of chilling, Sanchez argues only that White has continued to litigate. (Mot. at 9; Reply at 4.) But the test is objective. A plaintiff need not show "that his speech was actually inhibited or suppressed," only that the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568-69).

A person of ordinary firmness would think twice about filing another grievance after an officer demanded that he drop his complaints, threatened to take everything he owned, and then lost the files that contained those complaints. "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Brodheim*, 584 F.3d at 1271. Here, the threat worked: White signed the form out of fear of losing everything he owned. (PAMF 17.) And harm "that is more than minimal will almost always have a chilling effect." *Rhodes*, 408 F.3d at 568 n.11. The loss of six boxes of active-case legal files is far more than minimal. (PAMF 12, 22, 25, 28.) The fourth element is satisfied.

**C. Sanchez Is Not Entitled to Qualified Immunity**

Judge McCormick did not reach qualified immunity either. (Recommendation at 17 n.7.) Sanchez's argument fails at both steps.

On the first step, Sanchez argued only that no constitutional violation occurred. (Mot. at 10.) As shown above, a reasonable jury could find that one did. On the second step, Sanchez framed the question as whether inmates have a right "to be free from the destruction of their property when they possess excess property and do not request that such property be stored." (*Id.*; *see* Reply at 4.) That framing assumes Sanchez's version of the facts: that he offered storage and White refused to choose. White denies both under

oath. (PAMF 19-20.) Qualified immunity cannot rest on the movant's version of genuinely disputed facts. *Tolan*, 572 U.S. at 656-57.

Taken in White's favor, the question is whether an officer may threaten a prisoner's property to make him drop his grievances against the officer's coworkers, and then cause the loss of the prisoner's legal files after the prisoner threatens to grieve and sue him. Binding precedent answered that question long before April 2020. "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Pratt*, 65 F.3d at 806; *see Shepard*, 840 F.3d at 693. In 2005, the Ninth Circuit held that allegations that officers confiscated, withheld, and destroyed a prisoner's property, threatened to transfer him, and assaulted him because he filed grievances and sought access to the legal process stated "the very archetype of a cognizable First Amendment retaliation claim." *Rhodes*, 408 F.3d at 568. In 2009, it held that a threat of harm can itself be an adverse action. *Brodheim*, 584 F.3d at 1270. In 2011, it held that a prisoner stated a retaliation claim where officials seized and withheld a prisoner's legal files, including sixteen boxes of documents, and repeatedly transferred him, in retaliation for his litigation. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104-05 (9th Cir. 2011), *overruled on other grounds as recognized in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). And by 2017, it had held that a prisoner's threats to sue are protected conduct. *Entler*, 872 F.3d at 1039; *Jones*, 791 F.3d at 1035-36. No reasonable officer could have believed that the conduct White describes was lawful. Sanchez is not entitled to qualified immunity.

## V. CONCLUSION

White respectfully requests that the Court decline to adopt the Recommendation and deny Sanchez's motion for summary judgment.

Dated: October 19, 2026

LAW OFFICES OF DALE K. GALIPO

*/s/ Cooper Mayne*
Cooper Mayne
*Attorney for Plaintiff Pedro White, Sr.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Pedro White, Sr., certifies that this brief contains 6,945 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 19, 2026

LAW OFFICES OF DALE K. GALIPO

*/s/ Cooper Mayne*
Cooper Mayne
*Attorney for Plaintiff Pedro White, Sr.*